123 T.C. No. 5

UNITED STATES TAX COURT

JAMES M. ROBINETTE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12052-01L.                    Filed July 20, 2004.

On Oct. 31, 1995, P and R entered into an offer-in-compromise.  The terms of the offer-in-compromise required P to, among other things, timely file his 1995 through 1999 tax returns.  On the morning of Oct. 15, 1999, the day P's 1998 return was due, P's accountant (A) prepared P's return.  That afternoon, A drove to P's office to obtain P's signature on P's return.  A returned to his office.  Thereafter, A affixed postage to the envelope containing P's return using a private postage meter.  A deposited the envelope containing P's return in a U.S. Postal Service mailbox in his office building.

R's records indicate that R received all of P's returns except for P's 1998 return.  R declared P's offer-in-compromise in default.  After a hearing in which P raised the issue of compliance with the terms of the offer-in-compromise, R issued a notice of determination in which R determined to proceed with collection of the unpaid tax liabilities.

>    <u>Held</u>: Pursuant to sec. 6330(c), I.R.C., abuse of
> discretion is the applicable standard of review.
>
>    <u>Held</u>, <u>further</u>, When reviewing R's determination
> for an abuse of discretion under sec. 6330, I.R.C., we
> may consider evidence presented at trial which was not
> included in the administrative record.
>
>    <u>Held</u>, <u>further</u>, R abused his discretion in
> determining to proceed with collection.

<u>Thomas L. Overbey</u> and <u>Laurie M. Boyd</u>, for petitioner.

<u>Martha J. Weber</u>, for respondent.

VASQUEZ, <u>Judge</u>:  This case was commenced in response to a Notice of Determination Concerning Collection Action(s) Under Sections 6320[1] and/or 6330.  The issue is whether respondent may proceed with collection of petitioner's 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, and 1991 tax liabilities.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, first supplemental stipulation of facts, second supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.  At the time he filed the petition, petitioner resided in Jonesboro, Arkansas.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All amounts are rounded to the nearest dollar.

Since approximately 1990, Douglas W. Coy has served as petitioner's accountant. Mr. Coy has prepared petitioner's tax returns for all the tax years in which he has represented petitioner.

Petitioner's Offer-in-Compromise

On October 31, 1995, petitioner and respondent entered into an offer-in-compromise. The offer-in-compromise related to income tax liabilities for 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, and 1991, and trust fund recovery penalties for unpaid employment taxes for periods ending March 31, June 30, and September 30, 1988, June 30 and December 31, 1989, and March 31, June 30, and September 30, 1990. The offer-in-compromise was submitted on the basis of doubt as to collectibility. The amount of individual income tax and statutory additions compromised totaled $989,475.[2] Petitioner offered to pay $100,000 to

---

[2] The trust fund recovery penalties to be compromised under sec. 6672 were $102,030. By order dated Oct. 21, 2002, the Court granted respondent's motion to dismiss for lack of jurisdiction and to strike as to the trust fund penalties. The parties agree:

> The doctrine of collateral estoppel will apply to
> prohibit the Respondent, as well as the Petitioner,
> from re-litigating the Petitioner's appeal of the
> Notice of Determination in the District Court if the
> Tax Court decides whether the Respondent abused his
> discretion in proceeding with collection of tax
> liabilities previously compromised prior to a decision
> of that issue by the District Court.

compromise the outstanding liabilities and penalties.[3]

Petitioner paid $1,000 with the submission of the offer and the remaining $99,000 with borrowed funds within 60 days after acceptance of the offer.

Petitioner agreed to the following terms and conditions:

(d)  I * * * will comply with all the provisions
     of the Internal Revenue Code related to
     filing my * * * returns * * * for five (5)
     years from the date IRS accepts the offer.

              *    *    *    *    *    *    *

(j)  I * * * understand that I * * * remain
     responsible for the full amount of the tax
     liability unless and until IRS accepts the
     offer in writing and I * * * have met all the
     terms and conditions of the offer.  IRS won't
     remove the original amount of the tax
     liability from its records until I * * * have
     met all the terms and conditions of the
     offer.

              *    *    *    *    *    *    *

(o)  If I * * * fail to meet any of the terms and
     conditions of the offer, the offer is in
     default, and IRS may:

              *    *    *    *    *    *    *

         (iv) file suit or levy to collect
         the original amount of tax

---

[3]  As additional consideration, petitioner signed a Form 2261, Collateral Agreement, in which he also agreed to pay 40 percent of his annual income in excess of $100,000 and not in excess of $130,000; 50 percent of annual income in excess of $130,000 and not in excess of $150,000; and 60 percent of annual income in excess of $150,000.  Petitioner's annual income was less than $100,000 for 1995, 1996, 1997, 1998, and 1999. Accordingly, petitioner was not required to pay additional consideration.

- 5 -

> liability, without further notice
> of any kind.

Petitioner's 1998 Individual Income Tax Return

Petitioner received an extension to file his 1998 individual income tax return (petitioner's 1998 return) on or before October 15, 1999.  On the morning of October 15, 1999, Mr. Coy received via facsimile petitioner's Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., for Professional Acres Leasing Group from the accounting firm of Osborne & Osborne.  Upon receipt of the Schedule K-1 on October 15, 1999, Mr. Coy completed petitioner's 1998 return.  For 1998, petitioner was entitled to a refund of $3,300.

At approximately 3:45 to 4 p.m. on October 15, 1999, Mr. Coy left his office in Little Rock, Arkansas, en route by car to three other cities in Arkansas in order to review State and Federal income tax returns with four of his clients, including petitioner, and to obtain his clients' signatures on their returns.  First, Mr. Coy drove to Mount Pleasant, Arkansas, to deliver the returns of Howard and Jane Lamb for review and signatures.  After the Lambs signed their tax returns, Mr. Coy drove to Melbourne, Arkansas, to deliver the returns of David and Theresa Sharp for review and signatures.  After the Sharps signed their tax returns, Mr. Coy delivered the returns of Fred Lamb, also in Melbourne, Arkansas, for review and signature.  After Mr. Lamb signed his tax returns, Mr. Coy drove to Jonesboro,

Arkansas, to deliver the returns of petitioner for review and signature.

Mr. Coy arrived at petitioner's office between 8:45 and 9 p.m. Petitioner signed the returns in the presence of Mr. Coy and Frances Robinette, petitioner's wife and office manager.

After the clients signed their tax returns, Mr. Coy took the signed returns from his clients so that he could mail them from his office in Little Rock, Arkansas.

Mr. Coy returned to his office in Little Rock, Arkansas, sometime after 11 p.m., but before midnight. Mr. Coy made a copy of the signature page of petitioner's 1998 return. Mr. Coy affixed postage to the envelope containing petitioner's 1998 return using a private postage meter. The postage from the private postage meter displayed a postmark of October 15, 1999. Before midnight, Mr. Coy placed the envelope containing petitioner's 1998 return in a U.S. Postal Service mailbox in the building where his office is located.

At this same time, Mr. Coy mailed the returns of Mr. Sharp. Mr. Sharp was not assessed late filing penalties or late payments by the Internal Revenue Service (IRS) with respect to his 1998 individual income tax return.

Petitioner's 1995, 1996, 1997, 1999, and 2000 Individual Income Tax Returns

Petitioner received extensions to file his 1995 individual income tax return on or before October 15, 1996. Petitioner's

1995 individual income tax return was prepared by Mr. Coy on October 15, 1996. For 1995, petitioner paid the $2,593 shown as owed on his return.

Petitioner received extensions to file his 1996 individual income tax return on or before October 15, 1997. Petitioner's 1996 individual income tax return was received by the IRS on October 20, 1997. For 1996, petitioner was entitled to a refund of $14,435.

Petitioner received extensions to file his 1997 individual income tax return on or before October 15, 1998. Petitioner's 1997 individual income tax return was prepared by Mr. Coy on October 14, 1998, and received by the IRS on October 19, 1998. For 1997, petitioner was entitled to a refund of $5,644.

Petitioner received extensions to file his 1999 individual income tax return on or before October 15, 2000. Petitioner's 1999 individual income tax return was prepared by Mr. Coy on October 15, 2000, and received by the IRS on October 19, 2000. For 1999, petitioner was entitled to a refund of $2,631.

Petitioner received extensions to file his 2000 individual income tax return on or before October 15, 2001. Petitioner's 2000 income tax return was received by the IRS on October 17, 2001.

Each of the aforementioned years, including 1998, on or about October 15, Mr. Coy, or a person from Mr. Coy's office,

delivered to petitioner at petitioner's office his original individual income tax return, and petitioner would sign it.

IRS Collection Efforts

On February 21, 2000, the IRS sent petitioner a "Request for Your Tax Return" for 1998. Petitioner received this letter. On March 17, 2000, the IRS notified petitioner that it had received his required Statement of Annual Income for 1998 but needed a copy of his 1998 Form 1040, U.S. Individual Income Tax Return. On April 17, 2000, the IRS sent petitioner a letter stating: "Your Tax Return is Overdue -- Contact us Immediately" for 1998. The letter also stated:

> *** OFFER IN COMPROMISE ***
> Our records indicate that we've accepted an offer in compromise from you. You agreed to file and pay all your federal taxes for the five (5) year period after we accepted this offer. If you don't file the requested delinquent return, we may reinstate the amount you owe that we previously compromised.

Petitioner forwarded to Mr. Coy by fax all notices from the IRS concerning his 1998 return and offer-in-compromise, as he was "scared to death" of these notices.

The Austin, Texas, Service Center monitored petitioner's offer-in-compromise. Revenue Officer Kathy Santino of the Oklahoma City, Oklahoma, office was assigned to examine whether petitioner's offer-in-compromise was in default. She examined petitioner's offer-in-compromise "as a courtesy to the Austin Service Center [because] they were overloaded in potentially-

defaulted offers". Ms. Santino knew of the 5-year filing requirement, but she did not know what years were covered by petitioner's offer-in-compromise. In her courtesy investigation of petitioner's offer-in-compromise, she did not look at the transcripts for 1995, 1996, or 1997. She did not consider petitioner's pattern of filing his returns on or about October 15. Ms. Santino never spoke with petitioner or Mr. Coy.

On July 13, 2000, Ms. Santino sent petitioner a letter declaring petitioner's offer-in-compromise in default. The basis for the default was that the IRS had not received petitioner's Form 1040 for 1998.

On September 28, 2000, the IRS issued a Final Notice--Notice of Intent to Levy and Your Right to a Hearing.

On October 6, 2000, petitioner, through his authorized representative Mr. Coy, filed a Form 12153, Request for a Collection Due Process Hearing. Petitioner stated the basis for the appeal as: "We do not believe the taxpayer owes the amounts stated in the Notice of Intent to Levy and would like the opportunity to resolve these matters at a Collection Due Process Hearing."

On January 10, 2001, Appeals Officer Troy C. Talbott of the Oklahoma City, Oklahoma, office sent Mr. Coy a letter identifying the options available for resolution of petitioner's tax liability (such as full payment, installment agreement, offer-in-

compromise, or determination that petitioner's account is currently not collectible) and asking for more details as to why petitioner did not owe the amount stated in the notice of intent to levy. Mr. Talbott also requested and reviewed the IRS administrative file related to the default of the offer-in-compromise. On January 24, 2001, Mr. Talbott looked at petitioner's transcript of account for 1998. Mr. Talbott's case activity record states: "Per research on IDRS, no record of 98 1040 being filed. * * * Per IRP information, TP had a filing requirement, but may have been due a refund." Mr. Talbott concluded that petitioner had defaulted on the offer-in-compromise.

On January 29, 2001, in a telephone section 6330 hearing (the hearing), Mr. Coy stated to Mr. Talbott that he mailed petitioner's 1998 return on October 15, 1999. Specifically, Mr. Coy told Mr. Talbott that he prepared petitioner's return, took the return to petitioner, obtained petitioner's signature, and mailed the return on October 15, 1999.

The only evidence Mr. Talbott would consider for proof of mailing was a certified mail or registered mail receipt. Mr. Talbott did not consider petitioner's pattern of filing returns on October 15, despite having looked at the transcripts for 1995, 1996, 1997, and 1999.

Mr. Talbott believed he had no authority to reinstate petitioner's offer-in-compromise. He believed only the National Office could reinstate the offer-in-compromise. He stated: "The National Office would still have to do the reinstatement by itself" and the "National Office would have the call". Mr. Talbott reviewed the Internal Revenue Manual. The manual was silent as to whether an Appeals officer has authority to reinstate an offer-in-compromise.

Mr. Coy sent Mr. Talbott a copy of petitioner's 1998 return. Mr. Talbott received the copy of petitioner's 1998 return on February 16, 2001. Mr. Talbott forwarded it to the Austin Service Center, where it was processed by the IRS as an original return. Petitioner's transcript of account for 1998 states "return filed and tax assessed" on April 2, 2001.

Petitioner never personally met with, or spoke to, Mr. Talbott.

The Appeals settlement memorandum prepared by Mr. Talbott concluded that the notice of intent to levy was appropriate. Mr. Talbott's evaluation concluded:

> The Offer in Compromise was defaulted because the IRS did not have a record of the taxpayer filing Form 1040 for 1998. The taxpayer's representative claimed to have timely mailed the tax return for 1998 on October 15, 1999, but the tax return was not sent by certified mail and the representative does not have any evidence to prove that the return was mailed. The taxpayer did not respond to the IRS's requests to file the tax return, which resulted in the offer being defaulted.

On August 21, 2001, the IRS issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 determining to proceed with collection. Petitioner timely filed a petition with the Court.

OPINION

## I. Section 6330

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to do so within 10 days after notice and demand, the Secretary can collect such tax by levy upon property belonging to such person. Pursuant to section 6331(d), the Secretary is required to give the taxpayer notice of his intent to levy and within that notice must describe the administrative review available to the taxpayer, before proceeding with the levy. See also sec. 6330(a).

Section 6330(b) describes the administrative review process, providing that a taxpayer can request an Appeals hearing with regard to a levy notice. At the Appeals hearing, the taxpayer may raise certain matters set forth in section 6330(c)(2), which provides, in pertinent part:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> * * * * * * *
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or proposed levy, including--

       (i)  appropriate spousal defenses;

       (ii)  challenges to the appropriateness of collection actions; and

       (iii)  offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

       (B)  Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000).

Pursuant to section 6330(d)(1), within 30 days of the issuance of the notice of determination, the taxpayer may appeal that determination to this Court if we have jurisdiction over the underlying tax liability. Van Es v. Commissioner, 115 T.C. 324, 328 (2000).

II. Standard of Review

The parties dispute the standard of review to be applied in this case. Although section 6330 does not prescribe the standard

of review that the Court is to apply in reviewing the Commissioner's administrative determinations, we have stated that where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Where the validity of the underlying tax liability is not properly at issue, however, the Court will review the Commissioner's administrative determination for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181.

Generally, under section 6330(c)(2)(B), issues that are reviewed de novo include those such as a redetermination of the tax on which the Commissioner based the assessment, provided that the taxpayer did not have an opportunity to seek such a redetermination before assessment. See, e.g., Landry v. Commissioner, 116 T.C. 60, 62 (2001) ("Because the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which petitioner is entitled, is properly at issue, we review respondent's determination de novo."). Whether the Commissioner's assessment was made within the limitation period also constitutes a challenge to the underlying tax liability. Hoffman v. Commissioner, 119 T.C. 140, 145 (2002).

Under an abuse of discretion standard, "we do not interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law." Ewing

v. Commissioner, 122 T.C. 32, 39 (2004); see also Woodral v. Commissioner, 112 T.C. 19, 23 (1999). Review for abuse of discretion includes "any relevant issue relating to the unpaid tax or the proposed levy", including "challenges to the appropriateness of collection actions" and "offers of collection alternatives" such as offers in compromise. Sec. 6330(c)(2)(A). Questions about the appropriateness of the collection action include whether it is proper for the Commissioner to proceed with the collection action as determined in the notice of determination, and whether the type and/or method of collection chosen by the Commissioner is appropriate. See, e.g., Swanson v. Commissioner, 121 T.C. 111, 119 (2003) (challenge to appropriateness of collection reviewed for abuse of discretion).

Abuse of discretion is the proper standard of review in this case. The introductory language of section 6330(c)(2)(A) encompasses the situation at bar. Mr. Talbott's conclusion that respondent had acted properly in declaring petitioner's offer-in-compromise in default and that issuing a notice of determination was proper is a "relevant issue relating to the unpaid tax or the proposed levy". Further, offers in compromise are a specifically mentioned collection alternative. Sec. 6330(c)(2)(A)(iii). Additionally, whether respondent may proceed with collection of petitioner's unpaid liability is a challenge to the

appropriateness of collection.  See sec. 6330(c)(2)(A)(ii);
Swanson v. Commissioner, supra.

Petitioner argues that a de novo standard of review is
appropriate because he "put forth the argument of the validity of
the underlying taxes--i.e. the petitioner does not owe the tax,
nor the additions to the tax, since the tax was previously
discharged by an Offer in Compromise which was improperly
defaulted by the respondent".  We view petitioner's argument as a
challenge to the appropriateness of collection, rather than as a
challenge to the underlying tax liability.  See Swanson v.
Commissioner, supra.

III. Evidentiary Issue

A.    The Parties' Contentions

At trial, respondent moved to strike "all documents and
testimony not part of the administrative record on the ground
that the trial record should be limited to the agency
administrative record."  Documents and testimony not part of the
administrative record include:  (1) Petitioner's testimony; (2)
petitioner's tax returns for 1995, 1996, 1997, 1999, 2000, and
other stipulated facts relating to the date these returns were
received by the IRS; (3) Mr. Coy's private postage meter log,
cellular telephone records, credit card records, and daily
calendar for October 15, 1999; (4) Frances Robinette's testimony;
and (5) all statements made by Mr. Coy at trial that he did not

make to Mr. Talbott. Respondent contends that this evidence is not relevant because it is not part of the administrative record.

Petitioner contends that this evidence is relevant. Petitioner argues that on account of the informal nature of section 6330 hearings, as there is no formal record, it is impossible to determine the actual statements made at the hearing. Further, petitioner argues that the tax returns for 1995, 1996, 1997, 1999, and 2000 show his pattern and practice of filing returns on or about October 15.

The Court reserved decision on this issue. For the following reasons, we hold that, when reviewing for abuse of discretion under section 6330(d), we are not limited by the Administrative Procedure Act (APA) and our review is not limited to the administrative record. The evidence in this case pertains to issues raised at the hearing. The evidence in this case is relevant and admissible.

B.  Applicability of the APA Judicial Review Provisions to Tax Court Proceedings Commenced Under Section 6330(d)

1.  Established Practice and Procedure

Since the enactment of section 6330, the Court has applied our traditional de novo procedures in deciding whether an Appeals officer abused his or her discretion in determining to proceed with collection. At trials under section 6330 when reviewing for abuse of discretion, the Court has received into evidence testimony and exhibits that were not included in the

administrative record.  See, e.g., <u>Wells v. Commissioner</u>, T.C. Memo. 2003-234 (taxpayer's testimony admissible at trial when he was represented by counsel and taxpayer was not present at hearing); <u>Maloney v. Commissioner</u>, T.C. Memo. 2003-143 (taxpayers presented numerous letters sent to Commissioner asking him to recalculate their FICA taxes as evidence of claimed overpayments), affd. 94 Fed. Appx. 969 (3d Cir. 2004); <u>Black v. Commissioner</u>, T.C. Memo. 2002-307 (extensive testimony as to taxpayer's physical limitations due to diabetes and testimony of taxpayer's accountant considered when, at hearing, taxpayers raised issue of illness from diabetes and presented Appeals officer with medical files), affd. 94 Fed. Appx. 968 (3d Cir. 2004); <u>Gougler v. Commissioner</u>, T.C. Memo. 2002-185 (Court considered two documents at trial that were not presented to Appeals officer); <u>Holliday v. Commissioner</u>, T.C. Memo. 2002-67 (Commissioner permitted to present documents, records, and testimony at trial that was not part of administrative record), affd. 57 Fed. Appx. 774 (9th Cir. 2003) ("Holliday's contention that the Tax Court erred by admitting into evidence documents that were not produced at the * * * [section 6330] hearing fails because the <u>'record review' provisions of the Administrative</u>

Procedure Act * * * <u>do not apply to the Tax Court</u>." (Emphasis added.)), cert. denied 124 S. Ct. 1038 (2004).[4]

        2.    <u>The Court's Specific Statutory Review Provisions</u>

The APA has never governed proceedings in the Court (or in the Board of Tax Appeals). <u>Ewing v. Commissioner</u>, 122 T.C. at 50 (Thornton, J., concurring). It is well established that "The Tax Court, rather than being a 'reviewing court' within the meaning of Sec. 10(e) [of the APA] reviewing the 'record', is a court in which the facts are triable de novo". <u>O'Dwyer v. Commissioner</u>, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957). The "Tax Court is not subject to the Administrative Procedure Act."

---

[4] Additionally, in numerous instances, we have noted the taxpayer's failure to present evidence at trial. This failure to present evidence supported our conclusion that the Appeals officer did not abuse his or her discretion. See, e.g., <u>Dorn v. Commissioner</u>, T.C. Memo. 2003-192 ("Petitioner did not offer sufficient evidence at his section 6330(b) hearing or before this Court to show he is entitled to prevail" when petitioner did not offer any evidence at trial related to the issues raised at his hearing); <u>Maloney v. Commissioner</u>, T.C. Memo. 2003-143 ("Petitioners did not present any evidence that their excess withholdings for 1984 exceeded [the stipulated amount of credits for increased Federal income tax withholdings, including FICA taxes]", and "they presented no evidence that they made deposits or that any FICA taxes were assessed after the applicable period of limitations had expired"), affd. 94 Fed. Appx. 969 (3d Cir. 2004); <u>Schulman v. Commissioner</u>, T.C. Memo. 2002-129 (settlement officer did not abuse her discretion where "petitioners presented no evidence at trial or on brief to otherwise substantiate their expenses" and where "petitioners did not introduce any evidence of any meaningful ties to Ozaukee County, other than the relative proximity of their residence"); <u>Howard v. Commissioner</u>, T.C. Memo. 2002-81 ("Petitioner also did not present any evidence at trial or otherwise show any irregularity in the assessment procedure.").

Id.  In Nappi v. Commissioner, 58 T.C. 282, 284 (1972), we reasoned that the APA provisions "apply to an 'agency' of the Government of the United States, but specifically exclude 'the courts of the United States.' * * * the United States Tax Court is established as a court of record under article I of the Constitution of the United States.  Being a court of the United States, it is excluded from the provisions of the * * * [APA]."

Although section 6330 postdates the APA, the APA judicial review provisions are not applicable.  The APA does not "limit or repeal additional requirements imposed by statute or otherwise recognized by law."  5 U.S.C. sec. 559 (2000).  The Court's de novo procedures for reviewing IRS functions were well established and "recognized by law" at the time of the APA's enactment. Ewing v. Commissioner, supra at 52 (Thornton, J., concurring); see also Phillips v. Commissioner, 283 U.S. 589, 598, 600 (1931); Blair v. Oesterlein Mach. Co., 17 F.2d 663, 665 (D.C. Cir. 1927); Barry v. Commissioner, 1 B.T.A. 156, 157 (1924).  The Court's de novo procedures provide a stricter scope of review of the Commissioner's determinations than would be obtained under APA judicial review procedures.  Ewing v. Commissioner, supra at 52-53 (Thornton, J., concurring).

The APA does not supersede specific statutory provisions for judicial review, as it is a statute of general application.  5 U.S.C. secs. 703, 704 (2000); Ewing v. Commissioner, supra at 50

(Thornton, J., concurring). "The legislative history of APA section 703 makes clear that where there is a special statutory review proceeding relevant to the subject matter, that special statutory review 'shall not be disturbed'." Ewing v. Commissioner, supra at 50 (Thornton, J., concurring); see also S. Comm. on the Judiciary, 79th Cong., Administrative Procedure Act (Comm. Print 1945), reprinted in Administrative Procedure Act Legislative History, 1944-46, at 11, 37 (1946); see also H. Rept. 1980, 79th Cong., 2d Sess. (1946), reprinted in the Administrative Procedure Act Legislative History, 1944-46, at 233, 276 (1946). "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).

The Internal Revenue Code has long provided a specific statutory framework for reviewing determinations of the Commissioner. Section 6330 is part and parcel of this statutory framework. The Court's de novo review procedures emanate from this framework. The APA judicial review procedures do not supplant the Court's longstanding de novo review procedures. Thus, the Court's de novo procedures are not limited by the APA.

3. <u>Section 6330 Hearings Are Not Formal Adjudications</u>

Section 6330 hearings do not take the form of the formal adjudicative hearings under the APA.  Indeed, the Commissioner's regulations describe the hearing as informal and not subject to the APA:

> Q-D6.  How are * * * [section 6330] hearings conducted?
>
> A-D6.  The formal hearing procedures required under the Administrative Procedure Act, 5 U.S.C. 551 <u>et seq.</u>, do not apply to * * * [section 6330] hearings. * * * [Section 6330] hearings are much like Collection Appeal Program (CAP) hearings in that they are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting.  A * * * [section 6330] hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof.  A transcript or recording of any face-to-face meeting or conversation between an Appeals officer or employee and the taxpayer or taxpayer's representative is not required.  The taxpayer or the taxpayer's representative does not have the right to subpoena and examine witnesses at a * * * [section 6330] hearing. [Sec. 301.6330-1(d)(2), Proced. & Admin. Regs.]

The Commissioner vigorously litigated, and we agreed, that hearings are informal.  In <u>Davis v. Commissioner</u>, 115 T.C. 35 (2000), we held that taxpayers had no right to subpoena witnesses to appear at a hearing.  We stated:

> When Congress enacted section 6330 and required that taxpayers be given an opportunity to seek a pre-levy hearing with Appeals, Congress was fully aware of the existing nature and function of Appeals.  Nothing in section 6330 or the legislative history suggests that Congress intended to alter the nature of an

Appeals hearing so as to compel the attendance or examination of witnesses. When it enacted section 6330, Congress did not provide either Appeals or taxpayers with statutory authority to subpoena witnesses. The references in section 6330 to a hearing by Appeals indicate that <u>Congress contemplated the type of informal administrative Appeals hearing that has been historically conducted by Appeals</u> and prescribed by section 601.106(c), Statement of Procedural Rules. The nature of the administrative Appeals process does not include the taking of testimony under oath or the compulsory attendance of witnesses. * * * [<u>Id.</u> at 41-42; fn. ref. omitted; emphasis added.]

In <u>Katz v. Commissioner</u>, 115 T.C. 329, 337 (2000), we held that the Appeals officer may conduct the hearing by telephone. In <u>Nestor v. Commissioner</u>, 118 T.C. 162, 166-167 (2002), we held that the IRS was not required to provide assessment records to the taxpayer at the hearing. In some instances, we have affirmed the Appeals officer's determination when no hearing was conducted. See <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 189 (2001). In <u>Keene v. Commissioner</u>, 121 T.C. 8 (2003), we held that while the IRS is not required to record the hearing, the taxpayer may make an audio record.

The "administrative record" compiled at the hearing is quite limited. It is nowhere near as comprehensive as the record required to be compiled at a formal APA hearing. See 5 U.S.C. sec. 556(e) ("The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision in accordance with * * * [5 U.S.C. section 557]"). Section 6330 hearings were not intended

to provide a detailed factual record for judicial review. Rather, they allow for the taxpayer to informally raise matters relevant to the collection actions at hand, such as spousal defenses, propriety of IRS collection activities, and alternatives to collection actions proposed by the IRS. See sec. 6330(c)(2)(A).

### 4. Legislative History

Nothing in the legislative history of section 6330 or 6320 indicates that the APA applies or that the Court's review is limited to the administrative record. Congress was well aware when it enacted section 6330 that the Court is a trial court which has historically resolved cases by taking evidence and has never been governed by the APA. Section 6330 expanded the Court's jurisdiction. The conference agreement states: "The determination of the appeals officer may be appealed to the Tax Court or, where appropriate, the Federal district court." H. Conf. Rept. 105-559, at 266 (1998), 1998-3 C.B. 747, 1020. The report specifies that where "the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion." Id. Reference to the APA or the administrative record, however, is absent.

### 5. Other Instances Where the Court Reviews for Abuse of Discretion

"The mere fact that judicial review is for abuse of discretion * * * does not trigger application of the APA record rule or preclude this Court from conducting a de novo trial. * * * [This] Court has a long tradition of providing trials when reviewing the Commissioner's determinations under an abuse of discretion standard." Ewing v. Commissioner, 122 T.C. at 53 (Thornton, J., concurring). In Ewing, we held that when reviewing the Commissioner's determination for an abuse of discretion under section 6015, we may consider evidence presented at trial which was not included in the administrative record. Id. at 44. Our review of section 6330 cases for abuse of discretion is similar to our review of section 6015(f) cases--which are reviewed for an abuse of discretion. Id. at 39; Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181; Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 293 (2000).

The APA does not apply to challenges of the Commissioner's denials of requests to abate interest under section 6404, which are reviewed for abuse of discretion. See Beall v. United States, 336 F.3d 419, 427 n.9 (5th Cir. 2003) ("review under the APA is accordingly available only where 'there is no other adequate remedy in a court'"). The Court has consistently

conducted trials on the issue of whether the Commissioner's denial of a request to abate interest under section 6404 was an abuse of discretion. See, e.g., Goettee v. Commissioner, T.C. Memo. 2003-43; Jacobs v. Commissioner, T.C. Memo. 2000-123.

Additionally, other cases the Court has decided under the abuse of discretion standard include waiver of additions to tax, Krause v. Commissioner, 99 T.C. 132, 179 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994); reallocation of income or deduction under section 482, Bausch & Lomb v. Commissioner, 933 F.2d 1084, 1088 (2d Cir. 1991), affg. 92 T.C. 525 (1989); declaratory judgment, Fujinon Optical, Inc. v. Commissioner, 76 T.C. 499, 506-507 (1981); tax-exempt status, Lowry Hosp. Association v. Commissioner, 66 T.C. 850 (1976); and change of accounting method, Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Bank One Corp. v. Commissioner, 120 T.C. 174 (2003). In none of these types of cases have we held that the APA applies or that we are limited to the administrative record.

For the reasons set forth supra, we conclude that our review under section 6330(d) of an Appeals officer's determination is not limited to the administrative record.

C. Whether the Evidence Presented at Trial Relates to Issues Raised at the Hearing

Respondent, citing Magana v. Commissioner, 118 T.C. 488, 493 (2002), contends that "only 'arguments, issues and other matter'

presented to Appeals are relevant to the determination whether an appeals officer abused his or her discretion." Further, respondent argues that "judicial review of respondent's exercise of discretion in this case should be based solely on the information presented to, and considered by, the appeals officer." We disagree with respondent's interpretation of Magana.

In a review for abuse of discretion of the Commissioner's determination under section 6330(d)(1), "generally we consider only arguments, issues, and other matter that were raised at the collection hearing or otherwise brought to the attention of the Appeals Office." Magana v. Commissioner, supra at 493 (emphasis added). "We did not say in Magana that the taxpayer would be limited to the administrative record or that the taxpayer may not offer evidence in the proceeding in this Court." Ewing v. Commissioner, supra at 41.

In Magana, the issue for decision on the Commissioner's motion for summary judgment was whether the Court "shall consider a new issue that was not raised by the petitioner at his collection hearing with respondent's Appeals Office." Magana v. Commissioner, supra at 489 (emphasis added). In the taxpayer's request for a collection hearing and at the hearing, the only issue raised was whether the period of limitations had expired

under section 6502. The taxpayer did not raise the issue of
hardship. See id. at 490, 491.

In his petition to the Court, the taxpayer "for the first
time, raised hardship as an objection to respondent's lien
filings (namely, petitioner's physical illness and the resulting
cloud on title to petitioner's residence, petitioner's only
significant asset)." Id. At the oral argument on the
Commissioner's motion for summary judgment, the taxpayer's
counsel "acknowledged that * * * [the taxpayer's] ill health was
not recent but had extended over 20 years." Id. at 492. In
response to the Court's questioning, the taxpayer's counsel
"acknowledged that he had had an opportunity at the collection
hearing to raise hardship but that he had chosen not to do so."
Id.

In the discussion section of the Opinion, under the heading
"New Issue", we reasoned:

> In this case, because petitioner's alleged
> longstanding illness and hardship were not raised as an
> issue and were not otherwise brought to respondent's
> attention in connection with petitioner's collection
> hearing with respondent's Appeals Office, petitioner
> may not now raise hardship for the first time before
> this Court. * * * [Id. at 493-494.]

The cases cited for support of the holding in Magana were issue
preclusion cases. See, e.g., McCoy Enters., Inc. v.
Commissioner, 58 F.3d 557, 563 (10th Cir. 1995) (Court does not
have to rule on an issue when taxpayer "cannot point to a single

time at which it presented the * * * issue to the Commissioner to be ruled upon"), affg. T.C. Memo. 1992-693; <u>Miller v. Commissioner</u>, 115 T.C. 582, 589 n.2 (2000) ("we would not consider petitioner's alternative request * * * because the <u>record does not establish</u> that he <u>raised that issue</u> at his Appeals Office hearing" (Emphasis added.)), affd. 21 Fed. Appx. 160 (4th Cir. 2001); <u>Inner Office, Inc. v. United States</u>, No. 3:00-CV-2576-L, ("Plaintiff has produced no evidence that the IRS Hearing Officer's determination is legally incorrect or that the IRS Hearing Officer abused his discretion. * * * In seeking district court review of a Notice of Determination, the taxpayer can only ask the court to consider an <u>issue</u> that was raised in the taxpayer's * * * [section 6330] hearing." (Emphasis added.)), adopted on this issue 89 AFTR 2d 2002-1311, 2003-1 USTC par. 50,185 (N.D. Tex. 2002).

Unlike the taxpayer in <u>Magana</u>, petitioner is not raising a new issue in his petition. At the hearing, petitioner raised the issue of compliance with the terms of the offer-in-compromise. Mr. Coy asked Mr. Talbott to reinstate the offer-in-compromise. Mr. Coy brought to the attention of Mr. Talbott the fact that he mailed petitioner's 1998 return on October 15, 1999. Mr. Talbott's notes in his case activity record indicate that Mr. Coy raised the issue and brought to his attention that Mr. Coy mailed the return on October 15, 1999. Shortly after the hearing, Mr.

Coy wrote Mr. Talbott stating: "As I had mentioned, I prepared the return for [petitioner], obtained his signature, and mailed the return to the Service Center on the evening of October 15, 1999." This was brought to the attention of Mr. Talbott.

Accordingly, we may consider evidence regarding this issue at trial, if it is otherwise admissible under the Federal Rules of Evidence.

D. Whether the Evidence Is Admissible Under the Federal Rules of Evidence

While we are not limited by the APA's judicial review provisions in our proceedings arising under section 6330(d), our review of materials not included in the Commissioner's administrative record is subject to the Federal Rules of Evidence. Section 7453 and Rule 143(a) provide that the Court's proceedings are to be conducted in accordance with the rules of evidence applicable in trials without a jury in the U.S. District Court for the District of Columbia. Consistent with section 7453 and Rule 143(a), we must decide whether evidence in this case which was not included in the administrative record is admissible under the Federal Rules of Evidence in our proceedings arising under section 6330(d).

Respondent moved to strike the evidence on the ground of relevancy. "All relevant evidence is admissible. * * * Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence "means evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Therefore, we must determine whether the evidence presented at trial that respondent characterizes as "outside of the administrative record" has any tendency to make the existence of any fact that is of consequence in determining whether the Appeals officer abused his discretion more probable or less probable than it would be without the evidence. We find that the evidence does have a tendency to show the Appeals officer abused his discretion in determining to proceed with collection.

Petitioner's testimony is relevant. Petitioner was not present at the hearing. Petitioner's testimony shows that he signed the 1998 return on October 15, 1999. Petitioner's testimony shows that he had filed his returns for 1995, 1996, 1997, 1999, and 2000 on or about October 15 in the same pattern and practice as he did for 1998. Petitioner's testimony shows that he acted in good faith in complying with the terms of the offer-in-compromise.

Petitioner's tax returns for 1995, 1996, 1997, 1999, and 2000 are relevant. They show a pattern and practice of petitioner's filing his returns on or about October 15. They show petitioner generally received refunds for the period in issue. While the Appeals officer reviewed petitioner's

transcripts for 1995, 1996, 1997, and 1999, he did not consider petitioner's pattern and practice of timely filing. After reviewing petitioner's transcripts, the Appeals officer concluded petitioner was probably entitled to a refund for 1998. These facts, however, were of no consequence to him when he reviewed whether the offer-in-compromise should have been defaulted.

Mr. Coy's private postage meter log, cellular telephone records, credit card records, and daily calendar for October 15, 1999, are relevant. They corroborate Mr. Coy's statements regarding mailing. The Appeals officer, however, refused to consider any evidence of mailing, other than a certified or registered mail receipt.

Frances Robinette's testimony is relevant. Under Davis v. Commissioner, 115 T.C. 35 (2000), taxpayers are not entitled to call witnesses at the hearing. Mrs. Robinette's testimony corroborates petitioner's good faith and compliance with the terms of the offer-in-compromise.

Mr. Coy's statements at trial that he did not make to Mr. Talbott are relevant. Mr. Coy's testimony indicates the Appeals officer's unwillingness to consider in depth certain issues that he raised at the hearing.

Accordingly, respondent's motion to strike will be denied.

IV.  Whether Respondent Abused His Discretion

Where, as here, the validity of the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182.  In doing so, we review whether the Appeals officer's determination was arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. at 23.  Having observed the appearance and demeanor of the witnesses testifying for petitioner at trial, including petitioner, we find them to be honest, forthright, and credible.

Taking into account all the facts and circumstances, we conclude that on the basis of the record before us, respondent abused his discretion in determining to proceed with collection.

A.  Whether Petitioner's Return Was Timely Filed

We note at the outset that contrary to petitioner's contentions, we find that petitioner's return was not timely filed.  Filing, generally, "is not complete until the document is delivered and received".  United States v. Lombardo, 241 U.S. 73, 76 (1916).  Section 7502 provides an exception to this rule. Section 7502(a)(1) provides that, in certain circumstances, a timely mailed document will be treated as though it were timely filed.  Section 7502(a)(2) provides that the timely mailing/timely filing rule applies if the postmark date on an

envelope falls within the prescribed period or on or before the prescribed date.

In the case of postmarks not made by the U.S. Postal Service, the timely mailing/timely filing rule applies "only if and to the extent provided by regulations prescribed by the Secretary".  Sec. 7502(b).  The postmark in this case was made by a private postage meter.  Section 301.7502-1(c)(1)(iii)(b), Proced. & Admin. Regs., provides:

> If the postmark on the envelope or wrapper is made other than by the United States Post Office, (1) the postmark so made must bear a date on or before the last date, or the last day of the period, prescribed for filing the document, and (2) the document must be received by the agency, officer, or office with which it is required to be filed not later than the time when a document contained in an envelope or other appropriate wrapper which is properly addressed and mailed and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the United States Post Office on the last date, or the last day of the period, prescribed for filing the document.  However, in case the document is received after the time when a document so mailed and so postmarked by the United States Post Office would ordinarily be received, such document will be treated as having been received at the time when a document so mailed and so postmarked would ordinarily be received, if the person who is required to file the document establishes (i) that it was actually deposited in the mail before the last collection of the mail from the place of deposit which was postmarked (except for the metered mail) by the United States Post Office on or before the last date, or the last day of the period, prescribed for filing the document, (ii) that the delay in receiving the document was due to a delay in the transmission of the mail, and (iii) the cause of such delay.  If the envelope has a postmark made by the United States Post Office in addition to the postmark not so made, the postmark which was not made by the United States Post Office shall be disregarded, and

whether the envelope was mailed in accordance with this subdivision shall be determined solely by applying the rule of (a) of this subdivision.  [Emphasis added.]

Mr. Coy testified that he placed petitioner's return in the mail between 11 p.m. and midnight.  Petitioner presented no evidence that this was before the last collection for that mailbox.  Petitioner presented no evidence as to a delay in the transmission of the mail.  Petitioner presented no evidence as to the cause of a delay.  Petitioner has failed to meet the requirements of the regulation.  See Fishman v. Commissioner, 420 F.2d 491, 492 (2d Cir. 1970), affg. 51 T.C. 869 (1969); cf. Jones v. Commissioner, T.C. Memo. 1998-197 (the taxpayer met requirements of non-U.S.-postmark regulation when evidence established, in part, that he deposited the envelope in the mail before the last collection).

Petitioner argues that Estate of Wood v. Commissioner, 909 F.2d 1155 (8th Cir. 1990), affg. 92 T.C. 793 (1989), and not the regulation, controls this issue.  In Estate of Wood, the Court of Appeals for the Eighth Circuit, the court to which an appeal of this case would lie, discussed section 7502 in the situation where the taxpayer's return was not received by the IRS. Petitioner's reliance on Estate of Wood is misplaced.  The presumption of delivery discussed in Estate of Wood is raised only when a timely mailing occurs.  As petitioner's return was

not timely mailed, the presumption of delivery discussed in
Estate of Wood has not been raised.

On the basis of the foregoing, we hold that petitioner has
not proven that he filed his return on October 15, 1999.  Mr. Coy
sent Mr. Talbott a copy of petitioner's 1998 return.  On February
16, 2001, Mr. Talbott received the copy of petitioner's 1998
return, which he forwarded to the Austin Service Center and which
was then processed by the IRS as an original return.
Petitioner's transcript of account for 1998 states:  "return
filed and tax assessed" on April 2, 2001.  Thus, petitioner's
return was late filed.

B.    Whether Petitioner Materially Breached the
      Offer-in-Compromise

Despite the late filing of petitioner's return, under the
facts and circumstances of this case, respondent abused his
discretion in determining to proceed with collection.  The
Appeals officer acted arbitrarily and without sound basis in law
and had a closed mind to the arguments presented on petitioner's
behalf.  He failed to consider the facts and circumstances of
this case.  He determined to proceed with collection even though
the breach in the contract was not material and under contract
law the contract remained in effect.

### 1. Jurisdiction To Consider Petitioner's Offer-in-Compromise

Respondent contends that the Court has no jurisdiction to determine whether petitioner's offer-in-compromise was properly terminated. Respondent contends that only the Court of Federal Claims or a U.S. District Court may review this determination. We disagree.

In Roberts v. United States, 242 F.3d 1065 (Fed. Cir. 2001), the Court of Appeals for the Federal Circuit reversed and remanded the order of the U.S. District Court for the Eastern District of Missouri transferring the case to the Court of Federal Claims for lack of jurisdiction. The Court of Appeals held that the U.S. District Court did have jurisdiction over the taxpayer's claim for refund, even though the tax liability resulted from an offer-in-compromise that the IRS had defaulted. The Court of Appeals reasoned:

> Roberts is not requesting, for example, damages from the government for breach of contract, which would constitute a claim based purely upon a government contract. Certainly, the district court does not have jurisdiction over additional contract claims Roberts may wish to assert against the government under the terms of the OIC * * *.
>
> Instead, Roberts has paid taxes that he alleges were illegally or erroneously collected. Tax cases heard in the district courts often involve offers in compromise * * *. The fact that the alleged collection error stems from the cancellation of Roberts's OIC contract with the IRS does not negate the fact that the monies at issue were paid pursuant to the internal-revenue laws. [Id. at 1069.]

The Court of Appeals found that the taxpayer had satisfied the jurisdictional requirements for a tax refund suit. Thus, the U.S. District Court could review whether the taxpayer's offer-in-compromise had been properly defaulted. See id.[5]

In this case, petitioner is not asserting a cause of action under contract law. See id. at 1068-1069. Petitioner seeks a finding from the Court that respondent abused his discretion in determining to proceed with collection, which is within our jurisdiction under section 6330. Respondent's determination to proceed with collection arises from defaulting petitioner's offer-in-compromise. Whether the offer-in-compromise was properly defaulted is a relevant issue relating to the unpaid tax or proposed levy. Sec. 6330(c)(2)(A). Respondent issued petitioner a notice of intent to levy on the basis of petitioner's unpaid tax liability.

---

[5] On remand, the U.S. District Court held that the taxpayer's failure to timely pay his 1995 taxes was a material breach of the offer-in-compromise. Further, the court held that "the doctrine of substantial performance has no relevance in this case as the Plaintiff completely failed to timely pay his 1995 federal income tax liability, and instead waited to pay it until April 10, 1997, so that he could offset his tax liability for 1995 with his losses in 1996." Roberts v. United States, 225 F. Supp. 2d 1138, 1149 (E.D. Mo. 2001).

2. Whether the Breach of the Offer-in-Compromise Was Material

a. Applicable Law

"An accepted offer in compromise is properly analyzed as a contract between the parties." Dutton v. Commissioner, 122 T.C. 133, 138 (2004). Offers in compromise are governed by "general principles of contract law." Id. "If the plaintiff's breach is material and sufficiently serious, the defendant's obligation to perform may be discharged. * * * Not so, however, if the plaintiff's breach is comparatively minor." TXO Prod. Corp. v. Page Farms, Inc., 698 S.W.2d 791, 793 (Ark. 1985).

In determining whether a failure to perform is material, the following five circumstances are significant:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. [1 Restatement, Contracts 2d, sec. 241 (1981).]

Arkansas law adopts this analysis.  See <u>TXO Prod. Corp. v. Page Farms, Inc.</u>, <u>supra</u>; see also <u>DHC Resort, LLC v. Razorback Entertainment Corp.</u>, 329 F.3d 974, 976 (8th Cir. 2003) (citing <u>TXO Prod. Corp. v. Page Farms, Inc.</u>, <u>supra</u>, and section 241 of 1 Restatement, Contracts 2d when applying Arkansas law).  The standard of materiality "is to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances."  1 Restatement, <u>supra</u>, sec. 241, comment a.

Cases in which courts have found offers in compromise materially breached, and thus in default, generally involve taxpayers who either fail to make payments agreed to in the offer-in-compromise to pay off the amount compromised, or fail to pay taxes owed during the 5-year period after the offer has been accepted.  See <u>United States v. Feinberg</u>, 372 F.2d 352, 356 (3d Cir. 1965) (decedent's installment payments of less than the amount due and estate's complete failure to make payments on offer constituted material breach of offer-in-compromise); <u>United States v. Lane</u>, 303 F.2d 1, 3-4 (5th Cir. 1962) (taxpayer's failure to comply with terms of collateral agreement by refusing to file annual statements and pay additional money constituted breach of offer-in-compromise); <u>Roberts v. United States</u>, 225 F. Supp. 2d 1138, 1148 (E.D. Mo. 2001) (taxpayer's delay in paying his 1995 tax liability of $246,354 was a material breach of the

offer-in-compromise); <u>Fortenberry v. United States</u>, 49 AFTR 2d 82-1027, 82-1 USTC par. 9191 (S.D. Miss. 1981) (taxpayer's failure to pay additional amounts under collateral agreement was breach of the terms of the offer-in-compromise); <u>United States v. Wilson</u>, 182 F. Supp. 567, 570 (D.N.J. 1960) (taxpayer's failure to pay weekly installments caused IRS to terminate offer-in-compromise).

### b.   <u>Analysis</u>

<u>Loss of benefit to injured party.</u>  In petitioner's late filing of his 1998 return, in which he was due a refund, the extent of the benefit that respondent was deprived of was not significant.  Inherent in the requirement that taxpayers comply with the provisions of the Internal Revenue Code for 5 years is the IRS expectation that the taxpayer will pay the taxes owed on time.  See <u>Roberts v. United States</u>, 225 F. Supp. 2d at 1148.  In this case, however, petitioner was due a refund.

As stated <u>supra</u>, petitioner's return was not timely filed. Not every delay, however, constitutes a material breach.  There must also be a causal connection between the delay and the damages suffered by respondent, in order for a material breach to be found on the basis of the delay.  23 Williston on Contracts, sec. 63:18 (4th ed. 2002).  Respondent suffered no monetary damage from petitioner's late filing of the 1998 return.  Under

the facts of this case, the late filing, by itself, is not sufficient basis for a material breach of the contract.

Adequacy of compensation for loss.  The IRS was adequately compensated for its "loss".  Respondent suffered minimal, if any, damages, as he held petitioner's refund as security.

Forfeiture by party who fails.  Under this factor, the comments in the Restatement explain:  "[A] failure is less likely to be regarded as material if it occurs late, after substantial preparation or performance, and more likely to be regarded as material if it occurs early, before reliance."  1 Restatement, supra, sec. 241, comment d.  In this case, petitioner had substantially performed under the terms of the offer-in-compromise at the time the offer was declared in default. Petitioner's untimely mailing of the return occurred in the fourth year of a 5-year agreement.  Petitioner had already paid the full amount of the offer-in-compromise, with borrowed funds, within 60 days after the offer had been accepted.  Petitioner had complied with the filing requirements for the first 3 years of the agreement.  Further, at the time the Appeals officer determined to proceed with collection, petitioner had filed his 1998 return and complied with all other terms of the offer-in-compromise.

Uncertainty. Under this factor, the comments in the Restatement note:

> To the extent that expectation is already reasonably secure, in spite of the failure, there is less reason to conclude that the failure is material. The likelihood that the failure will be cured is therefore a significant circumstance in determining whether it is material * * *. The fact that the injured party already has some security for the other party's performance argues against a determination that the failure is material. [1 Restatement, supra, sec. 241, comment e.]

As stated supra, respondent was reasonably secured. Respondent had possession of petitioner's 1998 refund, making it likely that petitioner would perform under the agreement by filing his 1998 return. Respondent also had received $100,000 within 60 days of his acceptance of the offer, which was the amount offered and accepted as payment of petitioner's outstanding tax liabilities from 1983 to 1991. Additionally, before the Appeals officer determined to proceed with collection, petitioner had cured the defect. Petitioner submitted his 1998 return to the Appeals officer, at the request of the Appeals officer, to be filed as an original return.

Absence of good faith or fair dealing. Petitioner acted in good faith. Petitioner signed his 1998 return on the due date and gave it back to Mr. Coy for mailing. This was the pattern and practice petitioner had used in filing the returns prepared by Mr. Coy. He paid the full amount of the offer-in-compromise within 60 days after acceptance of the offer, with borrowed

funds.  He timely filed his returns for 1995, 1996, 1997, 1999, and 2000.[6]  Except for 1995, petitioner's returns indicate that petitioner was entitled to refunds.  For 1998, petitioner was entitled to a refund.  Before respondent issued the notice of determination, petitioner had filed his 1998 return.  Indeed, when petitioner received the notices from the IRS, he called Mr. Coy to discuss them and also forwarded the notices by fax to Mr. Coy, as he was "scared to death".

Additionally, Mr. Talbott did not have an open mind to the issues Mr. Coy presented at the hearing.  He did not consider that petitioner had acted in good faith.  Mr. Talbott did not consider petitioner's pattern of filing of returns on or about October 15, despite having looked at the transcripts for 1995, 1996, 1997, and 1999.

Mr. Talbott did not have an open mind regarding reinstatement.  Moreover, he failed to independently analyze whether the terms of the offer-in-compromise had been materially breached.  Mr. Talbott believed he had no authority to reinstate petitioner's offer-in-compromise.  He believed only the National Office could reinstate the offer-in-compromise.  Neither the Internal Revenue Code nor the Internal Revenue Manual, however, states that he could not reinstate the offer-in-compromise.  Mr.

---

[6]  We note that by the terms of the offer-in-compromise, the offer-in-compromise did not apply to 2000.

Talbott reviewed the Internal Revenue Manual.  The manual was silent as to whether he could reinstate the offer-in-compromise.

On the basis of the facts and circumstances of this case, we conclude that petitioner did not materially breach the terms of the offer-in-compromise.  As the offer-in-compromise was not in default, it was an abuse of discretion for respondent to determine to proceed with collection of petitioner's tax liability.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.

Reviewed by the Court.

GERBER, COHEN, SWIFT, WELLS, and LARO, <u>JJ.</u>, agree with this majority opinion.

CHIECHI, <u>J.</u>, dissents.

WELLS, J., concurring:  I respectfully write separately to express my belief that the majority opinion may have unnecessarily focused its analysis on contract law to decide whether respondent abused his discretion in the instant case. Section 6330(c)(3)(C) requires the Appeals officer to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  This provision requires the Appeals officer, when conducting a hearing under section 6330, to carry out a balancing of competing considerations between the Government and the person against whom the collection action is instituted.  Given this balancing requirement, I do not believe the Appeals officer should be required to <u>rigidly</u> apply contract law in determining whether the Government should proceed with collection of a liability where that liability, as in the instant case, has been compromised in an agreement between the Government and the person against whom the collection action has been instituted.[1]  Such a requirement would detract from the flexibility and discretion Congress granted the Appeals officer in section 6330(c)(3)(C) to balance competing interests between the Government and those persons.  Consequently, I believe the focus of the analysis in

---

[1]I do not mean to suggest, however, that respondent could not have considered contract law issues, as well as other facts and issues, as part of the balancing required under sec. 6330(c)(3)(C).

the instant case should be on whether respondent failed to undertake the balancing required under section 6330(c)(3)(C).

On the basis of the trial Judge's findings set out in the majority opinion in the instant case it is clear to me that respondent failed to balance the relatively slight harm to respondent of receiving an hours-late[2] return against the great harm to petitioner of reinstating and collecting a large tax liability.  The abuse of discretion in failing to undertake the required balancing becomes apparent when taking into account that petitioner had timely filed his other returns as agreed in the offer-in-compromise agreement, had made a good faith effort to timely file the 1998 return, and had paid all the tax due in that return and was due a refund.  See majority op. pp. 4-7.  Despite petitioner's technical[3] failure to timely file the 1998 return, respondent should have allowed petitioner to present evidence that favored petitioner's position and should have taken those facts into account in balancing the competing interests between the Government and petitioner.  Respondent should have considered

---

[2]By "hours-late" I mean hours after the "last collection" requirement of sec. 301.7502-1(c)(1)(iii)(B), Proced. & Admin. Regs.

[3]I do not mean to imply that taxpayers are not required to comply with the technical requirements of the Internal Revenue Code and the regulations thereunder.  However, respondent should have allowed petitioner to present evidence favoring petitioner's position despite petitioner's failure to comply with the last collection requirement of sec. 301.7502-1(c)(1)(iii)(B), Proced. & Admin. Regs.

that evidence, and on the basis of such evidence, should have determined not to proceed with collection. Respondent's failure to do so under these circumstances is an abuse of discretion.

Regarding Magana v. Commissioner, 118 T.C. 488 (2002), I question whether that case has any application to the instant case. The majority opinion properly distinguishes Magana on the grounds that petitioner is not raising a new issue. See majority op. p. 29. However, even if Magana could be read to exclude relevant and admissible evidence not raised during an Appeals Office hearing, it would have no application to the instant case. During the Appeals Office hearing in the instant case, petitioner attempted to present evidence relevant to his position, and respondent refused to consider it. If the Tax Court had no authority to develop a factual record in the instant case, there would not have been a sufficient record to determine whether respondent had abused his discretion. This is important because there are no formal procedures available for Appeals Office hearings. See sec. 301.6330-1(d)(1), Q&A-D6, Proced. & Admin. Regs. As this Court has stated, Appeals Office hearings historically have been informal, and in enacting section 6330, Congress did not intend to alter the nature of Appeals Office hearings. Davis v. Commissioner, 115 T.C. 35, 41 (2000). Thus, if the parties were not allowed to make a record in the trial before this Court, they could be precluded from presenting all of

the evidence in support of their respective positions.  Even the Commissioner has routinely sought to add evidence to the record in trials before this Court in order to bolster his determination in collection cases.  See Chase v. Commissioner, T.C. Memo. 2002-93, affd. 55 Fed. Appx. 717 (5th Cir. 2002); Lindsey v. Commissioner, T.C. Memo. 2002-87, affd. 56 Fed. Appx. 802 (9th Cir. 2003); Holliday v. Commissioner, T.C. Memo. 2002-67, affd. 57 Fed. Appx. 774 (9th Cir. 2003).

Regarding this issue, I also do not believe that allowing petitioner to present evidence in the instant case would mean that in other cases where a person refuses to comply with an Appeals officer's reasonable request for relevant evidence at the hearing, we would be required to receive that evidence in a trial in this Court.  In the instant case, petitioner attempted to present a wide array of evidence to support his position, and the Appeals officer refused to receive it.  Thus, the case where a person refuses to furnish relevant evidence requested at the Appeals Office hearing is not before us and raises an issue the Court has not addressed and need not address.

Accordingly, I agree with the conclusion of the majority opinion that respondent should be prevented from proceeding with collection in the instant case.

GERBER, FOLEY, MARVEL, and WHERRY, JJ., agree with this concurring opinion.

THORNTON, J., concurring:  I agree with the majority opinion's holding that the Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000), does not apply to our proceedings under section 6330.  Since its enactment in 1946, the APA has never governed proceedings in this Court (or in its predecessor, the Board of Tax Appeals), and there is no indication that, in enacting section 6330, Congress intended to change this general inapplicability of the APA.  See Ewing v. Commissioner, 122 T.C. 32, 50 (2004) (Thornton, J., concurring); see also O'Dwyer v. Commissioner, 266 F.2d 575, 580 (4th Cir. 1959) ("The Tax Court * * * is a court in which the facts are triable de novo * * *.  We agree that the Tax Court is not subject to the Administrative Procedure Act"), affg. 28 T.C. 698 (1957).

I also agree with the majority opinion's holding that, under the circumstances of this case, we may consider relevant evidence presented at trial which was not included in respondent's administrative record.  As discussed in my concurring opinion in Ewing, this Court traditionally has applied de novo trial procedures when reviewing the Commissioner's determinations, including in cases that we review for an abuse of discretion.

The majority opinion should not be construed, however, to hold that the administrative record has no significance in our review of determinations under sections 6320 and 6330.  Indeed, the administrative record takes on added significance under these

sections given the statutory requirement of an Appeals Office hearing, and we often have relied on the administrative record in reviewing Appeals Office determinations. Moreover, in appropriate circumstances, we might restrict ourselves to the administrative record--for instance, where the taxpayer has failed to cooperate in presenting relevant evidence at the Appeals Office hearing. In the instant case, petitioner attempted to introduce relevant evidence at the Appeals Office hearing, but the Appeals officer refused to consider that evidence and failed to include it in the administrative record. In these circumstances, I agree with the majority opinion that we are not limited to evidence in the administrative record.

Section 6330(c)(2) provides that a taxpayer may raise at the Appeals Office hearing "any relevant issue relating to the unpaid tax or the proposed levy". Section 6330(c)(3) requires that the determination by an Appeals officer shall take into consideration the relevant issues raised by the taxpayer in the Appeals Office hearing. In this case, Judge Vasquez, as the trial Judge, has found that issues relating to whether petitioner defaulted on the offer-in-compromise are relevant issues that petitioner raised in the Appeals Office hearing and which should have been considered by the Appeals officer in his determination, but were not. I defer to Judge Vasquez, as the trial Judge, in identifying the issues raised at the Appeals Office hearing and whether those issues are relevant. I also defer to his conclusions that the

Appeals officer failed to consider those relevant issues in his determination. On that basis, I agree with the majority opinion that "it was an abuse of discretion for respondent to determine to proceed with collection of petitioner's tax liability." Majority op. p. 45.

A taxpayer's express agreement to file timely tax returns is an integral condition to the Commissioner's acceptance of an offer-in-compromise, and a reasonable one--it merely confirms an obligation that is statutorily imposed (even in cases where the taxpayer is entitled to a refund), see secs. 6011(a) and 6012, and that is fundamental to our income tax system. Consequently, a taxpayer's failure to honor this obligation is not to be lightly regarded. With that being said, however, I agree with the majority opinion that it was an abuse of discretion to proceed with collection of petitioner's tax liability without considering relevant issues relating to petitioner's offer-in-compromise. I shall defer to Judge Vasquez's judgment in fashioning an appropriate remedy to address that abuse of discretion.

GERBER, COHEN, SWIFT, LARO, FOLEY, GALE, HAINES, GOEKE, WHERRY, and KROUPA, JJ., agree with this concurring opinion.

MARVEL, J. concurring:  I agree that the Administrative
Procedure Act does not apply and we are not limited to the
administrative record, and with the majority's conclusion that
the Appeals officer abused his discretion in this case, but I
question the majority's reliance on principles of contract law to
reach its conclusion.  The Appeals officer's failure to refer the
case to the National Office for guidance regarding the
reinstatement of petitioner's offer-in-compromise before making
his determination in this case is more than sufficient to support
the conclusion that the Appeals officer abused his discretion in
upholding the proposed collection action.

In his brief, petitioner asserted several errors that he
contended established an abuse of discretion.  One of those
errors was that the Appeals officer "did not fully investigate
the method of reinstating a revoked Offer in Compromise."  The
Appeals officer testified at trial that he did not believe that
he had the authority to reinstate the offer-in-compromise.  He
also testified, however, that he could have referred the case to
the National Office for guidance concerning the reinstatement of
an offer-in-compromise.[1]  Given the importance of the
reinstatement issue in determining whether the collection action

_____

[1]Although the Appeals officer's case activity records
indicate that he telephoned a person in the National Office on at
least two occasions regarding whether a defaulted offer-in-
compromise could be reinstated, it does not appear from the
records that formal guidance from the National Office was ever
obtained.

could proceed, the Appeals officer should have obtained the guidance he needed from the National Office before he made his determination in this case.

An Appeals officer is required by section 6330(c)(3) to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Until the Appeals officer had fully explored whether and under what circumstances he had authority to reinstate petitioner's offer-in-compromise, it was impossible for the Appeals officer to conduct the balancing analysis that section 6330(c)(3) requires.  Coupled with the Appeals officer's reluctance to fully explore the facts regarding petitioner's compliance with the terms and conditions of the offer-in-compromise, which the majority discusses at length, the failure to obtain the necessary guidance from the National Office supports a conclusion that the balancing required by section 6330(c)(3) did not occur and that the Appeals officer abused his discretion in upholding the proposed collection action.

LARO and WHERRY, JJ., agree with this concurring opinion.

HAINES, <u>J.</u>, concurring:  I concur with the result reached by the majority that we are not limited by the Administrative Procedure Act in this case, our review is not limited to the administrative record, and respondent abused his discretion in his determination to proceed with collection of petitioner's 1998 tax liability.  I write separately to make two points.

First, we have held that an offer-in-compromise is governed by general principles of contract law.  <u>Dutton v. Commissioner</u>, 122 T.C. 133, 138 (2004); majority op. p. 39.  We have not extended that holding to mean that the general principles of contract law must be determined by application of the law of the State where the taxpayer resides.

The majority opinion uses the Restatement of Contracts to provide the circumstances in which a failure to perform is "material".  Majority op. p. 39 (citing 1 Restatement, Contracts 2d, sec. 241 (1981)).  The majority opinion further states that "Arkansas law adopts this analysis."  Majority op. p. 40. Readers of this Opinion should not infer that the use of State law of a taxpayer's residence, rather than general contract principles, is necessary to reach the majority's result.  Given the number of offers-in-compromise negotiated and overseen by the Commissioner, if the terms of each offer-in-compromise had to be analyzed on the basis of the State law of a taxpayer's residence, the result would be an administrative nightmare for the

Commissioner. General contract principles as expressed in the Restatement of Contracts should control these determinations.

Second, an offer-in-compromise is an agreement between the taxpayer and the Government which settles a tax liability for payment of less than the full amount owed. 2 Administration, Internal Revenue Manual (CCH), sec. 5.8.1.1.1, at 16,253. In the case at bar, petitioner paid $100,000 to compromise individual income tax and statutory additions totaling $989,475. Majority op. p. 3. By defaulting petitioner, respondent now seeks to collect the remaining sums previously compromised.

Noncompliance with the terms of the offer-in-compromise does not automatically result in the offer's being defaulted. As 2 Administration, Internal Revenue Manual (CCH), sec. 5.19.7.3.22, at 18,507 (Defaults) states:

> (1) When a taxpayer fails to meet any term of an offer, the offer may be defaulted and all liabilities reinstated. Any of the following may result in a default of the offer.
>
> *    *    *    *    *    *    *
>
> • Failure to timely file subsequent tax returns and pay all taxes due during the compliance period.

The Internal Revenue Manual further states that "If the taxpayer does not comply with the provisions of the offer in compromise, the offer may be considered in default." 4 Administration, Internal Revenue Manual (CCH), sec. 8.13.2.5.4, at 27,581 (Actions on Defaulted Offers) (emphasis added).

Compromises are favored in the law, <u>Big Diamond Mills Co. v. United States</u>, 51 F.2d 721, 724 (8th Cir. 1931), and, thus, the Commissioner is under an obligation to be clear on the circumstances before making a default determination. In the case at bar, the Appeals officer failed to consider petitioner's pattern of filing his tax returns on or about October 15, did not speak with petitioner, and failed to independently analyze whether the terms of the offer-in-compromise had been materially breached. Majority op. p. 10. Failure to consider these facts constitutes an abuse of discretion.

GOEKE and WHERRY, <u>JJ.</u>, agree with this concurring opinion.

WHERRY, <u>J</u>., concurring:  While I agree with the majority in concluding that our review is not limited to the administrative record, I write separately to emphasize the temporal requirement which, in my view, must be met to satisfy the evidentiary burden.

The majority holds:

> that, when reviewing for abuse of discretion under section 6330(d), we are not limited by the Administrative Procedure Act (APA) and our review is not limited to the administrative record.  The evidence in this case pertains to issues raised at the hearing. The [new] evidence in this case is relevant and admissible. [Majority op. p. 17.]

This conclusion should not be construed as sanctioning the dilatory introduction at trial of new facts or documents previously withheld and not produced at the Appeals hearing in order to justify reversal or remand of the Appeals or settlement officer's determination.  "It is the responsibility of the taxpayer to raise all relevant issues at the time of the pre-levy hearing."  H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 747, 1020; see <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002). "Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing." Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

Nevertheless, pursuant to section 6330(d)(2), the Internal Revenue Service Office of Appeals retains jurisdiction of the collection action after the determination is made and a taxpayer may "apply for consideration of new information, make an offer-

in-compromise, request an installment agreement, or raise other considerations at any time, before, during, or after the Notice of Intent to Levy hearing." H. Conf. Rept. 105-599, supra at 266, 1998-3 C.B. at 1020. This Court should consider the entire record of the actions taken by the Appeals Office at the time it conducts its judicial review.

Consequently, where the Appeals officer has invited or requested relevant facts or documents from the taxpayer, before or at the collection hearing, and those facts or documents are not provided within a reasonable time, their attempted introduction as new evidence at trial may not establish an abuse of discretion. This could be the result because of the temporal requirement, even though an abuse of discretion might have been demonstrated had the documentation been timely produced before or at the collection hearing.

In the instant case, the Appeals officer's failure to fairly consider evidence available at the hearing and to request and consider possible corroborating evidence (where petitioner's and his accountant's credibility was, in the Appeals officer's mind, at issue), coupled with the failure to ascertain whether a material breach of the existing offer-in-compromise had occurred, constituted an abuse of discretion.

COHEN, LARO, GALE, THORNTON, HAINES, and GOEKE, JJ., agree with this concurring opinion.

HALPERN and HOLMES, JJ., dissenting:[1]  Petitioner admittedly owed almost $1 million in back taxes and additions to tax. Respondent agreed to forgo collection of almost 90 percent of that amount in exchange for petitioner's promise to pay the balance of $100,000 in 60 days and pay additional amounts if his future income exceeded certain levels.[2]  Respondent expressly conditioned his forbearance on petitioner's timely compliance with tax filing and payment requirements over the next 5 years. The majority essentially concludes that, notwithstanding petitioner's failures to (1) comply with the timely filing condition and (2) respond to at least three written requests demanding compliance, respondent may not declare petitioner in default and proceed to collect the compromised amount in accordance with the terms of the offer-in-compromise (OIC). Along the way, the majority (1) eviscerates the Court's holding in Magana v. Commissioner, 118 T.C. 488 (2002), regarding the matters we may properly address in a collection due process case,

---

[1]  Seventeen judges voted in conference on Judge Vasquez's report in this case.  Including Judge Vasquez, six judges agree fully with the report, while eight concur in the result but take exception to one or more of the report's particulars.  Since we do not have a full exposition of the exceptions, we are unable to say exactly how strong the conference agreement is on any of the particulars of the report.  We will assume, however, that a majority could be marshaled for each of the particulars we address here, and will refer to the "majority" in discussing those particulars.

[2]  As part of the agreement, petitioner also waived the period of limitations on collection.

and (2) unwisely extends <u>Ewing v. Commissioner</u>, 122 T.C. 32 (2004), which involved the evidence we may consider in a proceeding involving section 6015(f) ("equitable" innocent spouse relief).  Respectfully, we dissent.

I.  <u>Issues Regarding the Scope of Our Review</u>

Before we address the substantive aspect of the majority opinion, we turn our attention to our concerns regarding procedure.

A.  <u>"Topical" Scope of Review</u>

As the majority recognizes, majority op. p. 27, we held in <u>Magana v. Commissioner</u>, <u>supra</u> at 493, that, in reviewing determinations of the Commissioner under section 6330(d)(1) for abuse of discretion, "generally we consider only arguments, issues, and other matter that were <u>raised</u> at the collection hearing or otherwise brought to the attention of the Appeals Office."  See also sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs. (taxpayer appealing the Commissioner's determination may ask the court to consider only issues that were raised at the administrative hearing).  The majority distinguishes <u>Magana</u> on the ground that "petitioner is not raising a new issue in his petition."  Majority op. p. 29.  As far as it goes, that is a true statement:  Neither in the petition nor, previously, in his dealings with the Appeals Office did petitioner raise the issue of "material breach" (the majority does that on its own).  The

majority overcomes that obstacle by broadly framing the issue as "compliance with the terms of the offer-in-compromise", id., which, by implication, encompasses both actual (strict) compliance (petitioner's position) and deemed (substantial) compliance (the majority's position).

The majority's expansive characterization of the contract issue in this case is simply another way of saying that there is more than one possible argument in support of petitioner's claim that the OIC remained in force. Petitioner argued to the Appeals officer that the OIC remained in force because he had timely filed his 1998 return. He did not present to the Appeals officer the argument underlying the majority's conclusion; viz., that the OIC remained in force because petitioner's untimely filing of his 1998 return was not a material breach. As we stated in Magana v. Commissioner, supra at 493: "[G]enerally it would be anomalous and improper for us to conclude that respondent's Appeals Office abused its discretion under section 6330(c)(3) in failing to grant relief, or in failing to consider arguments, issues, or other matter not raised by taxpayers or not otherwise brought to the attention of respondent's Appeals Office." It is indeed anomalous and improper for the majority to conclude that respondent's Appeals Office abused its discretion in this case for failing to consider an argument not brought to its attention.

B.  Evidentiary Scope of Review

    1.  Unwarranted Extension of Ewing v. Commissioner

In Ewing v. Commissioner, supra (a report reviewed by the Court pursuant to section 7460(b)), the Court held that, in determining whether the Commissioner has abused his discretion in denying "equitable" innocent spouse relief under section 6015(f), the Court is not limited to a review of the administrative record; i.e., the petitioning taxpayer is entitled to a trial de novo.  The Commissioner had argued that we are so limited "pursuant to the Administrative Procedure Act (APA), 5 U.S.C. secs. 551-559, 701-706 (2000) and cases decided thereunder".[3] Id. at 35.

Although the Court disagreed with the Commissioner's APA argument, id. at 36, it based its holding largely on the language and structure of section 6015.  Specifically, the Court focused on the similar language in section 6015(e)(1)(A) (jurisdiction to "determine" the appropriate relief under section 6015) and sections 6213 and 6214(a) (jurisdiction to "redetermine"

---

   [3]  As we discussed in our dissenting opinion in Ewing v. Commissioner, 122 T.C. 32, 57-59 (2004) (Halpern and Holmes, JJ., dissenting), the issue regarding the applicability of the APA is a red herring.  The issue in Ewing was whether our review of the Commissioner's denial of sec. 6015(f) relief is subject to the record rule--the general rule of administrative law that a court can engage in judicial review of an agency action only on the basis of the record amassed by the agency.  See id. at 56, 58. The record rule predates, and indeed is not codified in, the APA. Id. at 58 n.4.

deficiencies asserted by the Commissioner, which proceedings unquestionably are conducted on a de novo basis). Id. at 38-39. The Court also reasoned that, inasmuch as a section 6015(f) claim (1) does not necessarily involve the review of discretionary action on the part of the Commissioner, see sec. 6015(e)(1)(A)(i)(II), (2) may be raised as an affirmative defense in an otherwise de novo deficiency proceeding, see, e.g., Butler v. Commissioner, 114 T.C. 276, 287-288 (2000), and (3) may involve the intervention of a third party (i.e., the nonrequesting spouse) who may not have participated in the administrative proceeding, see sec. 6015(e)(4), Congress likely intended a uniform, de novo scope of review to apply to such claims. See Ewing v. Commissioner, supra at 42-43.

In the instant case, despite the lack of any reference to the APA in respondent's opening brief, the majority frames the issue regarding the appropriate scope of review as follows: "Applicability of the APA Judicial Review Provisions to Tax Court Proceedings Commenced Under Section 6330(d)". Majority op. p. 17. The ensuing discussion in the majority opinion is based primarily on Judge Thornton's concurring opinion in Ewing v. Commissioner, supra at 50-56, which focuses exclusively on the APA issue. The majority loses sight of the fact that, in Ewing, a substantial portion of the Court's analysis, as discussed above, was based on the unique aspects of section 6015. The

majority's extension of <u>Ewing</u> to section 6330 cases is both unwarranted and uncritical.

    2.  <u>Additional Criticism of the Majority's Scope of Review Analysis</u>

In our dissenting opinion in <u>Ewing v. Commissioner</u>, 122 T.C. at 56-67 (Halpern and Holmes, JJ., dissenting), we discussed at some length our view that, in the context of our "review" jurisdiction, see <u>id.</u> at 56 n.1 and accompanying text, the appropriate evidentiary scope of review is the administrative record.  See, e.g., <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973) (in reviewing agency action for abuse of discretion, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"); <u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. 709, 715 (1963) (the terms "arbitrary" and "capricious" "have frequently been used by Congress and have consistently been associated with a review limited to the administrative record").  While we see no need to repeat here our entire analysis in support of that view,[4]

---

[4]  We do note that, in our <u>Ewing</u> dissent, we addressed much of the authority relied on by the majority here in its scope of review analysis.  See, e.g., <u>Ewing v. Commissioner</u>, <u>supra</u> at 60-61 (Halpern and Holmes, JJ., dissenting) (criticizing <u>O'Dwyer v. Commissioner</u>, 266 F.2d 575 (4th Cir. 1959), affg. 28 T.C. 698 (1957)); <u>id.</u> at 60 n.7 (explaining the context of <u>Nappi v. Commissioner</u>, 58 T.C. 282 (1972)); <u>id.</u> at 61 n.9 (explaining the context of <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 903 (1988), and <u>Beall v. United States</u>, 336 F.3d 419 (5th Cir. 2003)); <u>id.</u> at 64 n.11 (discussing APA sec. 559); <u>id.</u> at 65-66 (distinguishing <u>Thor Power Tool v. Commissioner</u>, 439 U.S. 522 (1979), <u>Bausch & Lomb,</u>
(continued...)

we do address certain difficulties with the majority's scope of review analysis in this case.

### a. Prior Section 6330 Cases in This Court

The majority cites five Memorandum Opinions of this Court in support of the statement that "[a]t trials under section 6330 when reviewing for abuse of discretion, the Court has received into evidence testimony and exhibits that were not included in the administrative record." Majority op. pp. 17-18. None of those opinions addresses the issue in this case; i.e., whether it is appropriate for the Court to go beyond the administrative record in a section 6330 case. The majority also cites three additional Memorandum Opinions of this Court in which "we * * * noted the taxpayer's failure to present evidence at trial." Majority op. p. 19 n.4. Again, none of those opinions addresses the issue of whether it is appropriate for the Court to consider matters beyond the administrative record in a section 6330 case.

The majority also cites and quotes an unpublished opinion of the Court of Appeals for the Ninth Circuit affirming one of the aforementioned cases. Majority op. pp. 18-19; see Holliday v. Commissioner, 91 AFTR 2d 2003-1338, 2003-1 USTC par. 50,358 (9th Cir. 2003), affg. T.C. Memo. 2002-67. That court did devote two

---

[4](...continued)
Inc. v. Commissioner, 933 F.2d 1084 (2d Cir. 1991), affg. 92 T.C. 525 (1989), and Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994)).

sentences to the "scope of review" issue.  Specifically, the Court of Appeals stated that the "record review" provisions of the APA do not apply to the Tax Court.[5]  The Court of Appeals provided the following citation in support of that statement: "See 5 U.S.C. § 504(a)(1) (APA does not apply where 'a matter [is] subject to a subsequent trial of the law and the facts de novo in a court')."  APA section 554, to which the Court of Appeals presumably was referring, provides rules governing agency adjudications "required by statute to be determined on the record after opportunity for an agency hearing"--i.e., formal agency adjudications.  APA section 554(a)(1) simply provides that, notwithstanding the general scope of APA section 554, that section (as opposed to the entire APA) does not apply if the matter is subject to a subsequent trial de novo.  In other words, the agency adjudication of such a matter need not conform to the "formal" procedural rules set forth in APA section 554.  As section 6330 administrative adjudications are not "required by statute to be determined on the record", it follows that APA section 554, including the "de novo" exception of APA section 554(a)(1), is altogether inapplicable to section 6330 proceedings.

---

[5]  As noted earlier, see supra note 3, the record rule predates, and is not codified in, the APA.  See also Ewing v. Commissioner, 122 T.C. at 60 n.8 and accompanying text (Halpern and Holmes, JJ., dissenting).

b.  Analogy to Deficiency Proceedings

Distilled to its essence, this portion of the majority's analysis proceeds from two major premises and one minor premise. The major premises are: (1) Our de novo deficiency procedures were well established before the enactment of the APA in 1946; and (2) Congress did not intend to disturb those existing procedures when it enacted the APA.  We have absolutely no quarrel with either of those premises.  By definition, then, the judge-made record rule, which is generally applicable to judicial review of agency action, does not apply to deficiency proceedings in this Court.  The majority's conclusion that the record rule is inapplicable to our section 6330 cases as well is based on the minor premise that section 6330, enacted in 1998, is "part and parcel" of the "specific statutory framework for reviewing determinations of the Commissioner" (i.e., our de novo deficiency procedures) that Congress did not intend to disturb in 1946.  See majority op. p. 21.  It is that minor premise that we are unable to accept.  Cf. Ewing v. Commissioner, supra at 64 n.11, 65-66 (Halpern and Holmes, JJ., dissenting).

c.  Section 6330 Hearings as Informal Adjudications

Here the majority seems to imply that only formal agency adjudications (i.e., those subject to the procedures set forth in APA sections 554, 556, and 557) are subject to the record rule. According to the Supreme Court, however, the record rule is no

less applicable to judicial review of informal agency action. See, e.g., <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985).  In the event the administrative record of such an informal proceeding is insufficiently developed, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  <u>Id.</u>; see also <u>United States v. Carlo Bianchi & Co.</u>, 373 U.S. at 718 (remand "would certainly be justified where the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny").

        d.   <u>Other Instances Where the Court Reviews for Abuse of Discretion</u>

The majority notes that the Court "'has a long tradition of providing trials when reviewing the Commissioner's determinations under an abuse of discretion standard.'"  Majority op. p. 25 (quoting Judge Thornton's concurring opinion in <u>Ewing v. Commissioner</u>, 122 T.C. at 53).  In our <u>Ewing</u> dissent, we suggested (on the basis of language in <u>Estate of Gardner v. Commissioner</u>, 82 T.C. 989, 999, 1000 (1984)) that our application of an abuse of discretion standard is properly the subject of a trial de novo when the exercise of discretion at issue is relevant to the Commissioner's determination of the existence or amount of a deficiency in tax or an addition to tax that is

subject to our deficiency jurisdiction.  See Ewing v. Commissioner, supra at 65-66 (Halpern and Holmes, JJ., dissenting).  We continue to adhere to that view.[6]

The majority cites a number of cases decided under the abuse of discretion standard, stating that "[i]n none of these types of cases have we held * * * that we are limited to the administrative record."  Majority op. p. 26 (emphasis added).  In three of the types of cases to which the majority alludes (involving section 482 reallocations, section 446 "clear reflection of income" determinations, and waivers of the former section 6659 addition to tax), the inapplicability of the record rule is consistent with the suggested approach discussed in the preceding paragraph.  See Ewing v. Commissioner, supra at 65 (Halpern and Holmes, JJ., dissenting).

The other two types of cases cited by the majority involve declaratory judgments with respect to determinations of the Commissioner under section 7428 (tax-exempt status) and section 7476 (qualified status of retirement plans).[7]  De novo

_____

[6] The fact that our application of an abuse of discretion standard may be the subject of a trial de novo does not necessarily mean that we are free to substitute our judgment for that of the Commissioner in such cases.  See, e.g., Capitol Fed. Sav. & Loan Association v. Commissioner, 96 T.C. 204, 209 (1991) (sec. 446); Bausch & Lomb, Inc. v. Commissioner, 92 T.C. 525 (1989), affd. 933 F.2d 1084 (2d Cir. 1991) (sec. 482).

[7] Separately, the majority cites two Memorandum Opinions of this Court in support of the proposition that "[t]he Court has
(continued...)

proceedings in those types of cases would be inconsistent with
the approach we suggested in our Ewing dissent.  Contrary to the
majority's assertion, we have limited our review to the
administrative record in those types of cases.  See Houston
Lawyer Referral Serv., Inc. v. Commissioner, 69 T.C. 570, 577
(1978) ("To allow oral testimony * * * as to facts not otherwise
in the administrative record to be introduced in evidence * * *
in a section 7428 declaratory judgment proceeding would convert
that proceeding from a judicial review of administrative action
to a trial de novo" and "would permit an applicant [for tax-
exempt status] to withhold information from the Internal Revenue
Service and then to introduce it before the Court"); Tamko
Asphalt Prods., Inc. v. Commissioner, 71 T.C. 824, 837 (1979)
(rejecting the argument of the taxpayer in a section 7476
proceeding "that it is entitled to a trial as in any other matter
before this Court", the Court reasoned that "[t]o permit
extrinsic evidence, other than that present in the administrative
record, would convert a declaratory judgment proceeding from a

---

[7](...continued)
consistently conducted trials on the issue of whether the
Commissioner's denial of a request to abate interest under
section 6404 was an abuse of discretion."  Majority op. pp. 25-
26.  In neither case did the Court address the issue of the
appropriate scope of review.  Although the issue is not before us
today, we would conclude that, for the same reasons discussed
herein and in our Ewing dissent, our review of the Commissioner's
interest abatement determinations is not properly the subject of
de novo proceedings.  See Ewing v. Commissioner, 122 T.C. at 65
n.12 (Halpern and Holmes, JJ., dissenting).

judicial review of an administrative determination to a judicial trial de novo"), affd. 658 F.2d 735 (10th Cir. 1981).

### e. Disregard of District Court Cases

The District Courts of the United States have jurisdiction to hear section 6330 appeals involving taxes over which the Tax Court does not have jurisdiction. Sec. 6330(d)(1)(B). As far as we can tell, those courts have uniformly limited their review for abuse of discretion in such cases to the administrative record. See Muller v. Rossotti, 93 AFTR 2d 2004-1782, 1786-1787, 2004-1 USTC par. 50,239, at 83,495 (M.D. Tenn. 2004) (quoting United States v. Carlo Bianchi & Co., 373 U.S. at 714); Living Care Alternatives, Inc. v. United States, 93 AFTR 2d 2004-761, 764 n.2, 2004-1 USTC par. 50,167, at 83,249 n.2 (S.D. Ohio 2003); Hart v. United States, 291 F. Supp. 2d 635, 640 (N.D. Ohio 2003); Cmty. Residential Servs., Inc. v. United States, 91 AFTR 2d 2003-2190, 2190, 2003-1 USTC par. 50,458, at 88,339 (M.D.N.C. 2003) (citing Camp v. Pitts, 411 U.S. at 142-143); Dudley's Commercial & Indus. Coating, Inc. v. United States, 292 F. Supp. 2d 976, 985 (M.D. Tenn. 2003) (citing Camp v. Pitts, supra at 142); Triad Microsys., Inc. v. United States, 90 AFTR 2d 2002-7332, 7334, 2003-1 USTC par. 50,106, at 87,030 (E.D. Va. 2002) (citing Camp v. Pitts, supra at 142); Carroll v. United States, 217 F. Supp. 2d 852, 858 (W.D. Tenn. 2002) (citing United States v. Carlo Bianchi & Co., supra at 714); Remole v. United States, 89 AFTR 2d

2002-1202, 1208, 2002-1 USTC par. 50,224, at 83,429 (C.D. Ill. 2001); MRCA Info. Servs. v. United States, 145 F. Supp. 2d 194, 198 (D. Conn. 2000) (quoting United States v. Carlo Bianchi & Co., supra at 714).  The majority makes no mention of those cases.  Are we to believe that Congress intended the appropriate scope of review in section 6330 cases to hinge on the type of tax involved?  Certainly, the language of section 6330 suggests no such distinction.

II.  The Contract Issue

The contract issue as framed by the majority (i.e., whether the OIC remained in effect despite petitioner's failure to timely file his 1998 return) is more nuanced than the majority opinion leads one to believe.  The majority oversimplifies what respondent was bargaining for, disregards the significance of the fact that respondent repeatedly offered petitioner the opportunity to cure his default, and assumes, without analysis, that the concepts of materiality and substantial performance are dispositive of the contract issue.

A.  Materiality of Timely Filing Requirement

The majority assumes that the only benefit the Commissioner seeks when accepting an OIC is the actual receipt of moneys owed under its terms:  "Respondent suffered no monetary damage from petitioner's late filing of the 1998 return."  Majority op. p. 41 (emphasis added).  But collecting money is not the Commissioner's

only purpose in agreeing to an OIC.  The preamble to section 301.7122-1, Proced. & Admin. Regs., explicitly refers to the IRS's interest in promoting the voluntary compliance of taxpayers.  T.D. 9007, 2002-2 C.B. 349, 350.  Indeed, not only is this one of the policy underpinnings of the regulations; it can even be the basis by itself for accepting an OIC.  The timely filing requirement is particularly important to the IRS as a monitoring device with respect to OICs, like the one here, which include future income level triggers that can result in additional payment obligations.  See majority op. p. 4 n.3.

B.  Opportunities To Cure

It is also important to emphasize how deliberate the IRS was before declaring the OIC in default.  Respondent did not default petitioner's OIC as soon as he realized the 1998 return had not been timely filed.  Following the guidance of 2 Administration, Internal Revenue Manual (CCH) (IRM), sec. 5.19.7.3.22.5, at 18,513, respondent first contacted petitioner to request the missing return and did so at least two more times thereafter.  See majority op. p. 8.  Those efforts by respondent were in keeping with the mandate of the IRM that in the event of potential default efforts "will be made to secure compliance".  IRM sec. 5.8.9.4, at 16,382.  Despite those efforts, petitioner did not provide the missing return until approximately 1 year

after he was first requested to do so.  That hardly qualifies as a "foot fault".

C.  Doctrine of Express Conditions

Regardless of the nature of the breach and respondent's response thereto, we think that the most relevant doctrines of contract law are not "substantial performance" and "material breach."[8]  Petitioner's obligation to timely file all his returns for 5 years was an express condition and so, as a general rule, is subject to strict performance.  See Calamari & Perillo, The Law of Contracts, sec. 11.9, at 403 (4th ed. 1998); 13 Williston on Contracts, sec. 38:6, at 384-385 (4th ed. 2000).  The relevant question should be whether there is an "excuse of conditions" that may apply.  Under that doctrine, petitioner would have to show that (1) strict compliance with the timely filing condition would result in an extreme forfeiture or penalty, and (2) timely filing was not an essential part of the bargain.  See 2 Restatement, Contracts 2d, sec. 229 (1981); 1 Restatement, Contracts, sec. 302 (1932).  If we are going to say that, as a matter of law, the Appeals officer should not have enforced the

_____

[8]  While the majority assumes that Arkansas law governs the contract issue, it is quite possible that, under principles set forth in Clearfield Trust Co. v. United States, 318 U.S. 363, 366-367 (1943), and United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-729 (1979), the Federal common law of contracts is the appropriate choice of law.  See Saltzman, IRS Practice and Procedure, par. 15.03[4][b], at 15-82 n.200 (rev. 2d ed. 2002).

OIC in accordance with its terms, that is the line of inquiry we should pursue.[9]

  D.  United States v. Lane

  Quite apart from any discussion of general contract law principles, we also disagree with the majority's treatment of the most similar case we have found, United States v. Lane, 303 F.2d 1 (5th Cir. 1962).  In Lane, the Court of Appeals rejected the taxpayer's argument that strict enforcement of his OIC would result in a forfeiture.  As had petitioner, the taxpayer had entered into an OIC which required him to pay a specific amount, pay additional amounts if his annual income exceeded a floor, and make annual statements of his income "regardless of amount".  The taxpayer paid the specific amount and then failed to make the annual statements of his income.  The taxpayer's OIC provided, like petitioner's, that, in the event of default, the Commissioner could revive and collect the unpaid balance of the

---

[9]  We are aware of authority indicating that, in the context of an executory accord (which an offer-in-compromise resembles), enforcement of the original obligation is justified only if the obligee's noncompliance with the accord is material.  See Frank Felix Associates, Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 286- 289 (2d Cir. 1997) (reasoning at 287 that, under a rule requiring strict compliance with the accord, the obligee "could obtain payment of a contested debt and, due to a minor breach of the accord, receive the windfall entitlement to reassert its pre- settlement claims" (Emphasis added.)).  We are not aware of any authority addressing the interplay between that line of reasoning and the doctrine of express conditions.  Again, if we are going to undertake a substantive analysis of contract law, those are the types of issues we should be addressing.

original debt.  The District Court, ruling in favor of the taxpayer, had reasoned that "'the taxpayer can't be pushed back for years and years and after a settlement is made and have a forfeiture so to speak, of everything he paid in under that settlement agreement.'"  Id. at 4.

The Court of Appeals for the Fifth Circuit reversed the District Court, holding that the OIC should be enforced as written.  Id. at 5.  It is worth considering the Court of Appeals' forceful language in that regard:

> In the present case, the contracting parties expressed their mutual intention in clear and unmistakable terms. * * * [The OIC] expressly provided that the Commissioner, upon default by the taxpayer could terminate the compromise agreement and proceed to collect the unpaid balance of the original tax liability.  This language is so precise, and the intention which it manifests is so evident, as to leave no doubt that the course of action taken by the Government here was fully authorized by the compromise agreement.

> There was nothing illegal, immoral or inequitable in the compromise agreement.  It did not provide for any "forfeiture".  By express provision, the amounts to be paid under the compromise agreement * * * could not exceed the aggregate amount which the taxpayer conceded that he owed the Government from the start.  By allowing the Government to revive the taxpayer's original liability, the taxpayer will not forfeit the amounts he has already paid, for those amounts will be applied to reduce the original liability.  The agreement was precise, it was fair, and it was freely consented to by the taxpayer.  There is no reason why it should not be enforced as written.

Id. at 4; see also Roberts v. United States, 225 F. Supp. 2d 1138, 1149 (E.D. Mo. 2001) (quoting the latter paragraph in full).

III.  Conclusion

We would sustain respondent's evidentiary objections on the basis of Magana v. Commissioner, 118 T.C. 488 (2002), and the record rule.  We would also hold that, in light of petitioner's breach of an express condition of the OIC and his failure to cure that breach despite ample opportunity to do so, respondent's Appeals officer did not abuse his discretion in sustaining the proposed collection activity.