T.C. Memo. 2018-184

UNITED STATES TAX COURT

W.T. SNIPES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27902-15L.                    Filed November 1, 2018.

        P has Federal income tax liabilities of approximately $23.5
million for tax years 2001-06.  These liabilities are largely a result of
P's failure to file Federal income tax returns.  R assessed these
deficiencies, filed a notice of Federal tax lien (NFTL), and issued
notice and demand for payment of the liabilities, and, when P did not
pay, issued to P a notice of the filing.  P timely requested a collection
due process hearing under I.R.C. sec. 6330(d) and stated that he
wanted a collection alternative--i.e., an offer-in-compromise (OIC) or
currently not collectible status--and wanted the NFTL withdrawn.  P
did not challenge his underlying tax liabilities.  P made a cash OIC of
$842,061, less than 4% of his total underlying liability.  R issued P a
notice of determination rejecting his OIC and sustaining the NFTL.  P
filed a petition in this Court.

        Held:  In view of P's failure to provide bona fide
documentation to prove his assets and financial condition, as well as
the disparity in his OIC versus his reasonable collection potential as
determined by R, the settlement officer did not abuse her discretion

[*2] by rejecting P's OIC, refusing to conduct an expedited transferee investigation, or sustaining the filing of the NFTL.

Vivian D. Hoard and Robert B. Gardner III, for petitioner.

Joel D. McMahan and Ashley Y. Smith, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


KERRIGAN, Judge: The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) dated October 6, 2015, that was issued by the Internal Revenue Service (IRS or respondent) Office of Appeals. The notice of determination sustained the filing of the notice of Federal tax lien (NFTL) regarding petitioner's unpaid income tax liabilities for 2001, 2002, 2003, 2004, 2005, and 2006 (years in issue).[1] The issue for consideration is whether the determination to proceed with the NFTL in lieu of a proposed collection alternative was an abuse of discretion.

---

[1]The 2002 liability was paid in full before the trial of this case and is no longer at issue.

**[*3]**   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.  We round all monetary amounts to the nearest dollar.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and exhibits are incorporated in our findings by this reference.  Petitioner resided in New Jersey when he timely filed his petition.

On August 27, 2013, respondent filed an NFTL against petitioner's property.  At the time of the filing of the NFTL petitioner's assessed income tax liabilities (underlying liabilities) for the years in issue were the following:

| Year | Underlying liability |
|------|----------------------|
| 2001 | $2,573,978 |
| 2002 | 1,497,645 |
| 2003 | 4,576,926 |
| 2004 | 5,625,612 |
| 2005 | 3,526,946 |
| 2006 | 5,777,543 |

The liabilities totaled approximately $23.5 million.

On September 4, 2013, petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP request).  In the CDP request

[*4] petitioner requested an installment agreement or an offer-in-compromise (OIC) as collection alternatives.  In April 2014 petitioner made a cash OIC of less than 4% of his total underlying liability, $842,061, on the basis of doubt as to collectibility.

On June 18, 2014, petitioner's CDP hearing was held.  In an effort to verify petitioner's income and assets to determine petitioner's reasonable collection potential (RCP), the settlement officer issued an investigatory request to respondent's Compliance Division.  Petitioner had numerous assets and real estate holdings, which were held in multiple entities.  In reviewing the information collected from both petitioner and the Compliance Division, the settlement officer spent considerable time and effort endeavoring to determine petitioner's income and assets, as well as the amount of equity he held in his assets, trusts, and businesses.

The settlement officer was unable to definitively determine that petitioner no longer owned certain properties petitioner claimed to have lost or transferred, and petitioner could not provide bona fide documentation of these properties' dissipation.  The settlement officer determined that petitioner's RCP was $17,482,152.  Petitioner did not increase his OIC.  On October 6, 2015,

[*5] respondent issued to petitioner a notice of determination rejecting his OIC and sustaining the NFTL.

Before trial both parties filed motions for summary judgment. By order dated October 6, 2016, the Court rejected the parties' motions for summary judgment and remanded petitioner's case to respondent's Appeals Office. The Court ordered the remand for the Appeals Office to conduct additional proceedings to supplement the record and to consider petitioner's RCP in the light of his current circumstances.

On remand the settlement officer conducted supplemental CDP proceedings. The settlement officer issued additional Appeals Referral Investigations requests to respondent's Compliance Division in an effort to investigate the disposition of petitioner's real estate holdings. Petitioner maintained his original OIC.

Petitioner contended during both CDP proceedings that his financial adviser, W. Johnson, had taken out loans and disposed of assets and income on his behalf, diverting the funds without petitioner's knowledge or benefit. Petitioner provided respondent with affidavits from Mr. Johnson regarding his misconduct and misuse of petitioner's assets and income. However, petitioner

[*6] did not provide any definitive or otherwise bona fide documentation showing the dissipation or diversion of his assets or income.

Petitioner requested that respondent conduct a transferee investigation of Mr. Johnson. Petitioner requested that his OIC be accepted with the condition of proving Mr. Johnson's transferee liability via the transferee investigation or that his case be labeled "currently not collectible" during the investigation's pendency. The settlement officer requested permission from her manager to conduct an expedited transferee investigation of Mr. Johnson. The settlement officer's manager explained that the CDP hearing could not be held open for a transferee investigation, nor could the IRS accept an OIC with conditions imposed on it.

Following review of petitioner's case the settlement officer reduced petitioner's RCP to $9,581,027 in an effort to compromise for settlement purposes. Petitioner maintained his original OIC of $842,061. The settlement officer ultimately concluded that it was not in the best interest of the Government to accept petitioner's OIC. The settlement officer's manager reviewed the settlement officer's actions regarding petitioner's case and her rejection of petitioner's OIC. On December 29, 2017, respondent issued petitioner a supplemental notice of determination sustaining the NFTL and again rejecting

**[*7]** petitioner's OIC.  The supplemental notice of determination was signed by the settlement officer's manager.

OPINION

Section 6320(a)(1) requires the Secretary to provide written notice to a taxpayer when the Secretary has filed an NFTL against the taxpayer's property and property rights.  See secs. 6321, 6323.  The Secretary must also notify the taxpayer of his right to a CDP hearing before the IRS Appeals Office.  Sec. 6320(a)(3).  The taxpayer can raise challenges to the underlying tax liability giving rise to the lien in a CDP case only if he did not receive a statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute it.  Secs. 6320(c), 6330(c)(2)(B).  No liability challenge is raised in this case.

Following a hearing the Appeals Office shall make a determination taking into account all issues properly raised by the taxpayer and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).  We note that the settlement officer properly based her determination on the factors specified by section 6330(c)(3).

[*8] I.      <u>Standard of Review</u>

Where the validity of the underlying tax liability is properly at issue, this Court reviews the liability determination de novo. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000). The Court reviews administrative determinations made by the Appeals Office regarding nonliability issues for abuse of discretion. <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000). The validity of petitioner's underlying tax liabilities is not at issue here. Accordingly, we review for abuse of discretion.

In determining whether there has been an abuse of discretion, we consider whether the determination by the Appeals Office was arbitrary, capricious, or without sound basis in fact or law. <u>See, e.g.</u>, <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999). The Court does not conduct an independent review of what would be an acceptable OIC. <u>Murphy v. Commissioner</u>, 125 T.C. at 320. If the settlement officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. <u>Link v. Commissioner</u>, T.C. Memo. 2013-53, at *12.

II.    <u>Abuse of Discretion</u>

The Court has previously held that it is not required to apply a limited scope of review and may accept evidence outside the administrative record in

**[*9]** CDP cases. See Robinette v. Commissioner, 123 T.C. 85, 101 (2004), rev'd, 439 F.3d 455 (8th Cir. 2006); see also Murphy v. Commissioner, 125 T.C. at 313.[2] The Court of Appeals for the Third Circuit has not specifically addressed this issue in a precedential opinion. Our review will not be limited to the administrative record.

Petitioner contends that the settlement officer abused her discretion in refusing his OIC by failing to (1) calculate petitioner's exact RCP, (2) exclude dissipated assets, (3) conduct an expedited transferee investigation into Mr. Johnson, (4) consider whether the NFTL would cause petitioner economic hardship, and (5) satisfy the review obligations of section 7122(e)(1).[3]

III.   Petitioner's OIC

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability. The regulations set forth three grounds for compromise: (1) doubt as to

_____

[2]The broad scope of review in Robinette is not controlling in the Court of Appeals for the First, Eighth, and Ninth Circuits. See Dalton v. Commissioner, 682 F.3d 149 (1st Cir. 2012), rev'g 135 T.C. 393 (2010), and T.C. Memo. 2011-136; Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part as to this issue T.C. Memo. 2006-166 and aff'g in part, vacating in part decisions in related cases; Robinette v. Commissioner, 123 T.C. 85, 101 (2004), rev'd, 439 F.3d 455 (8th Cir. 2006).

[3]Petitioner repeatedly references a proposed levy throughout his Simultaneous Opening Brief and Simultaneous Answering Brief. There is no levy at issue in this case; accordingly, we will not address it.

**[*10]** liability, (2) doubt as to collectibility, or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. At petitioner's initial and supplemental hearings he based his OIC on doubt as to collectibility.

The Secretary may compromise a tax liability on the basis of doubt as to collectibility where the taxpayer's assets and income render full collection unlikely. Id. subpara. (2). Conversely, the IRS may reject an OIC when the taxpayer's RCP exceeds the amount he proposes to pay. See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Generally, settlement officers are directed to reject offers substantially below the taxpayer's RCP unless "special circumstances" justify acceptance of such an offer. See Fairlamb v. Commissioner, T.C. Memo. 2010-22, slip op. at 11; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

Our review is limited to ascertaining whether the decision to reject that offer was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. at 320. We do not substitute our judgment for the settlement officer's as to the acceptability of any particular offer. See, e.g., Johnson v. Commissioner, 136 T.C. at 488.

[*11] A.     Petitioner's RCP

The settlement officer did not abuse her discretion by failing to determine petitioner's exact RCP.  As part of the RCP determination, the settlement officer considered petitioner's transfers of real property before and during his first CDP hearing through his trusts and entities.  The settlement officer spent considerable time and effort in her endeavor to determine petitioner's income and assets, as well as his equity in his assets, trusts, and businesses.  Petitioner objected generally to the amount of the RCP and asserted that he did not own properties that were being attributed to him.  The settlement officer was unable to definitively determine that petitioner no longer owned certain properties, and petitioner could not provide bona fide documentation of these properties' dissipation.

While the Internal Revenue Manual (IRM) directs the Appeals Office to calculate an RCP to evaluate doubt as to collectibility offers, it does not require the level of precision suggested by petitioner.  See, e.g., IRM pt. 5.8.4.3(2) (July 18, 2017), 5.8.4.3.1 (Apr. 30, 2015), 5.8.4.9 (May 10, 2013), 5.8.5.11(1) (Oct. 22, 2010). Given the disparity between petitioner's $842,061 OIC and the settlement officer's calculation of $9,581,027 as his RCP, as well as petitioner's inability to

**[\*12]** credibly document his assets, the settlement officer and her manager had ample justification to reject the offer.

### B.     Dissipated Assets

The settlement officer did not abuse her discretion by considering potentially dissipated assets of petitioner.  The IRM establishes that dissipated assets should generally not be used to calculate RCP except in certain circumstances.  IRM pt. 5.8.5.18(1) (Sept. 30, 2013).  However, the IRM also establishes that if it is determined that transferee assessment should be pursued by the Appeals Office during the investigation of an OIC, the Appeals Office should either secure a withdrawal letter from the taxpayer for the OIC or, if the OIC is not withdrawn, the Appeals Office should reject the OIC and then include the value of the transferee amount in the RCP.  See IRM pt. 5.8.10.5 (Sept. 27, 2011).

Even though the settlement officer included potentially dissipated assets in petitioner's RCP, she did not abuse her discretion.  She was properly following published guidance that directs settlement officers to reject an OIC where issues of transferee liability are present unless the taxpayer includes the transferee amount in his offer.  See id.  Petitioner had multiple entities in which his multiple assets, particularly his real estate properties, were held.  The settlement officer could not determine petitioner's assets clearly.  Moreover, petitioner did not

**[\*13]** provide bona fide or definitive documentation showing that he no longer owned the assets in question or to what extent, if any, he had benefited from their dissipation. He provided only affidavits by Mr. Johnson. The settlement officer was justified in her calculation of petitioner's RCP.

C. Transferee Investigation

The settlement officer did not abuse her discretion by failing to conduct an expedited transferee investigation of Mr. Johnson. Petitioner was informed that an expedited transferee investigation by the IRS field division could not be completed during his CDP proceedings. Petitioner provided no support for his contention that a taxpayer in a CDP proceeding has the authority or right to compel the IRS to conduct an expedited transferee liability investigation of a third party.

Further, the structure of the Appeals Office is not designed for a settlement officer to conduct indepth investigations, nor does it authorize the settlement officer or the Appeals Office to direct taxpayer examinations. See Dalton v. Commissioner, 682 F.3d 149, 155 (1st Cir. 2012) ("The CDP process neither allows for discovery, nor does it bring before the IRS all of the parties in interest[.]"), rev'g 135 T.C. 393 (2010), and T.C. Memo. 2011-136. The Appeals Office is a separate office, independent of the IRS field division and its functions.

[*14] See IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 1001(a)(4), 112 Stat. at 689. Under this structure settlement officers review the actions of the IRS field division, but they cannot perform the investigative functions of the field division, and they remain independent. See, e.g., IRM pt. 5.8.10.5(1) (Sept. 27, 2011) (providing information on how a transferee investigation will be initiated and conducted); IRM pt. 5.8.5.6(7) (Sept. 30, 2013) ("It is not necessary to actually seek or obtain any specific legal remedy in order to address * * * [transferee/nominee/alter ego] issues in an offer. However, the offer file must be clearly documented with the basis for including the value of a transferred asset in the RCP. Care should be taken so that the determination to include assets held by others is reasonable.").

D.   Economic Hardship

The settlement officer did not abuse her discretion in determining that petitioner would not suffer economic hardship as a result of the collection of a liability equal to the RCP. Economic hardship is considered a "special circumstance" under which a settlement officer can accept an OIC that is considered significantly below a taxpayer's RCP. See Murphy v. Commissioner, 125 T.C. at 309; McClanahan v. Commissioner, T.C. Memo. 2008-161, slip op. at 7-8; IRM pt. 5.8.4.2(4) (May 10, 2013).

**[\*15]** Factors indicating "economic hardship" include: (1) a long-term illness, medical condition, or disability that renders the taxpayer incapable of earning a living, where it is "reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition"; (2) a situation where the taxpayer's monthly income is exhausted by providing for care of dependents without other means of support; and (3) a situation where, although the taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and the liquidation of the assets would render the taxpayer unable to meet basic living expenses. Sec. 301.7122-1(c)(3)(i), Proced. & Admin. Regs.; IRM pt. 5.8.11.2.1(6) (Aug. 5, 2015).

Petitioner does not contend that he had a long-term illness, a medical condition, or a disability. Nor does he claim that he exhausts his monthly income providing for the care of dependents with no other means of support. Petitioner contends that payment of his RCP as calculated by the IRS would render him unable to meet basic living expenses.

The taxpayer must submit complete and current financial documentation to the Commissioner to prove economic hardship. See Vinatieri v. Commissioner, 133 T.C. 392, 398-399 (2009). Petitioner has not submitted complete and current financial data to respondent, as he did not provide definitive or bona fide

[*16] documentation of his assets. Accordingly, petitioner's settlement officer could not determine that he could not borrow against the equity of his real property interests or other assets, or that the liquidation of these interests would render him unable to meet basic living expenses. Petitioner did not make a showing of economic hardship necessary to qualify for special circumstances.

Absent a showing of special circumstances, settlement officers are directed to reject offers substantially below the taxpayer's RCP where the OIC is premised on doubt as to collectibility. See Clifford v. Commissioner, T.C. Memo. 2014-248, at *8-*9; see also Rev. Proc. 2003-71, sec. 4.02(2). Thus, the settlement officer did not abuse her discretion when she rejected petitioner's OIC and closed the case. We only decide whether there was an abuse of discretion and do not recalculate a different amount for an acceptable installment agreement or OIC. Murphy v. Commissioner, 125 T.C. at 320; Speltz v. Commissioner, 124 T.C. 165, 179-180 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006).

E.    Review Obligations of Section 7122(e)(1)

Petitioner contends that respondent failed to meet the independent administrative review requirement of section 7122(e)(1). Section 7122(e)(1) and its corresponding regulations require that the Secretary establish procedures for an independent administrative review of OIC rejections. See sec. 301.7122-1(f),

[*17] Proced. & Admin. Regs.  Petitioner asserts that review by respondent's Appeals Office manager, who reviewed the settlement officer's determination to reject petitioner's OIC, does not qualify as an "independent" reviewer under the above statute and regulation.

In the context of a collection hearing before the Appeals Office, the prescribed independent administrative review of the proposed rejection of an offer is typically done by an Appeals Office manager.  See Londono v. Commissioner, T.C. Memo. 2003-99.  Generally, where a settlement officer's proposed rejection of an offer was reviewed and approved by her Appeals Office manager, the independent review requirement has been met.  See id.; see also IRM pt. 8.22.9.4.3.1(4) (Aug. 9, 2017).  In this case the settlement officer's manager reviewed her rejection of petitioner's OIC.

IV.    Conclusion

Petitioner has failed to establish that the settlement officer did not properly determine that the requirements of any applicable law or administrative procedure had been met.  We find that the settlement officer properly based her determination on the required factors.  Accordingly, we conclude that the settlement officer did not abuse her discretion in determining that acceptance of petitioner's OIC was not in the best interest of the United States.

**[*18]** We have considered all other arguments made and facts presented in reaching our decision, and to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

For the foregoing reasons, the supplemental notice of determination will be sustained.

<u>Decision will be entered for</u>

<u>respondent</u>.