T.C. Memo. 2019-121

UNITED STATES TAX COURT

MICHAEL D. BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18104-17L. Filed September 16, 2019.

<u>Steven R. Mather</u> and <u>Lydia B. Turanchik</u>, for petitioner.

<u>Kevin W. Coy</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>: This collection due process (CDP) case was

commenced in response to two Notices of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330 dated August 11, 2017, upholding two

notice of Federal tax lien (NFTL) filings regarding petitioner's unpaid tax

[*2] liabilities for 2007 and 2014 (years in issue). The issue for our consideration is whether respondent's determinations to sustain the collection actions were proper.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times. We round all monetary amounts to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.[1] Petitioner resided in California when he timely filed his petition.

On January 8, 2009, petitioner filed his 2007 Form 1040, U.S. Individual Income Tax Return. On December 29, 2014, after an examination of petitioner's 2007 Form 1040, the parties reached a settlement for petitioner's outstanding tax liability for that year. Respondent assessed petitioner's unpaid 2007 tax liability on February 16, 2015.[2]

On April 2, 2015, respondent filed an NFTL against petitioner's personal residence for $35,268, and on April 14, 2015, sent petitioner a notice informing

---

[1]These facts are relevant portions of the administrative record.

[2]Petitioner's ex-wife was granted innocent spouse relief for 2007.

[*3] him of the NFTL filing and his right to a CDP hearing. On May 13, 2015, petitioner's counsel timely requested a CDP hearing on Form 12153, Request for a Collection Due Process or Equivalent Hearing. On Form 12153 petitioner's counsel indicated that petitioner wanted to submit an offer-in-compromise (OIC) as a collection alternative and did not raise the underlying tax liability for 2007.

Petitioner's outstanding tax liability for 2014 is based on his income tax liability reported on his 2014 Form 1040. Respondent assessed petitioner's 2014 tax liability on January 4, 2016.[3] On March 2, 2016, respondent filed an NFTL against petitioner's property for $48,457 and on March 15, 2016, sent petitioner a notice informing him of the NFTL filing and his right to a CDP hearing. On April 7, 2016, petitioner's counsel timely requested a CDP hearing on Form 12153. Petitioner's counsel indicated petitioner wanted to submit a collection alternative and checked the boxes for "Installment Agreement", "Offer in Compromise", and "I Cannot Pay Balance". The hearing request stated that the "lien filing was premature" and that the "liability is excessive due to failure to abate penalties".[4]

---

[3]Petitioner's 2014 filing status was "married filing separately".

[4]At petitioner's CDP hearing petitioner's counsel conceded these issues and raised only the OIC as a collection alternative.

**[*4]** In addition to the outstanding tax liabilities for the years in issue petitioner has outstanding tax liabilities for tax years 2001, 2002, 2004, 2005, 2006, 2009, 2010, and 2011. Petitioner's total outstanding tax liabilities exceed $50 million.

On April 28, 2016, this Court sustained respondent's filing of the NFTLs and the jeopardy levy actions for tax years 2001, 2002, 2004, 2005, and 2006. Brown v. Commissioner, T.C. Memo. 2016-82, aff'd, 697 F. App'x 1 (D.C. Cir. 2017). A portion of petitioner's 2009 liability arose from a Tax Equity and Fiscal Responsibility Act (TEFRA) audit of Zelly, LLC (Zelly), a limited liability company (LLC) in which he owns an interest. On July 7, 2014, petitioner filed a petition with this Court for a readjustment of partnership items relating to Zelly. See Zelly, LLC v. Commissioner, T.C. Dkt. No. 15609-14. The parties entered into a joint stipulation of settled issues on February 6, 2017. The Court entered a decision on January 23, 2018.

On January 22, 2016, petitioner's CDP case for the 2007 tax liability was assigned to a settlement officer. On June 8, 2016, petitioner's CDP case for the 2014 tax liability was assigned to the same settlement officer.

As part of her review the settlement officer searched the Internal Revenue Service (IRS) Partnership Investor Control File system, which showed that petitioner had open TEFRA audits for tax years 2002, 2005, and 2009. The

**[\*5]** settlement officer spoke with a TEFRA specialist to confirm there were open TEFRA audits.

On September 8, 2016, the settlement officer mailed petitioner a letter for tax year 2007 and a letter for tax year 2014 scheduling his CDP hearing. She also requested that he submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting documentation; a Form 656, Offer in Compromise, with the OIC application fee and required payment; a list of all cases pending at any level with the IRS; and a description of why petitioner believed the NFTLs were wrongly filed.

On October 24, 2016, petitioner's counsel provided the settlement officer with information relating to other pending tax issues, including tax years and issues before this Court, open TEFRA audits, and pending assessments. In addition to the 2009 TEFRA case for Zelly petitioner's counsel indicated that there were three other open TEFRA audits for 2009 relating to other entities in which petitioner held interests.

The settlement officer conducted petitioner's CDP hearing for the years in issue on October 26, 2016. Petitioner did not provide the settlement officer with Form 656 or supporting financial documentation before the CDP hearing. During the CDP hearing the settlement officer informed petitioner's counsel that

[*6] petitioner had the right to submit an OIC as a collection alternative but that it would likely be returned because of the open TEFRA cases.

In a letter to petitioner dated October 31, 2016, the settlement officer gave petitioner until November 16, 2016, to submit his OIC and accompanying payments. The letter explained that if the settlement officer did not receive the documents she would make a determination in his case on the basis of information available in the IRS' system. She also requested that petitioner provide completed Forms 433-B, Collection Information Statement for Businesses, for five different business entities; substantiation, if any, of those entities' financial information showing whether they were out of business; estimated tax payments for the first three quarters of 2016; and the contact information of the IRS employees handling the pending TEFRA cases and other tax matters currently under examination.

On November 16, 2016, petitioner submitted Form 656 offering to settle his total outstanding tax liabilities for all delinquent tax years in a lump-sum payment of $400,000. Petitioner submitted his OIC on the basis of doubt as to collectibility. With his OIC petitioner included a Tax Increase Prevention and Reconciliation[5] (TIPRA) payment of $80,000 (20% of the total OIC), the OIC

_____

[5]The Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. No. 109-222, sec. 509(a), 120 Stat. at 362, enacted new sec. 7122(c), effective for
(continued...)

**[*7]** application fee of $186, and his estimated tax payments for 2016. Petitioner did not request that his $80,000 TIPRA payment be applied against a specific year's tax liability. On his Form 656 petitioner acknowledged that his $80,000 TIPRA payment was a nonrefundable payment of tax.

On November 18, 2016, the settlement officer forwarded petitioner's OIC to the Centralized Offer in Compromise Unit in Holtsville, New York (Holtsville COIC Unit), for consideration. After reviewing all of the documentation, the Holtsville COIC Unit determined that petitioner's OIC was a processable offer. The Holtsville COIC Unit applied petitioner's OIC application fee of $186 and his $80,000 TIPRA payment against his total outstanding tax liabilities.

On January 10, 2017, the settlement officer sent petitioner's OIC to the Long Beach, California, Centralized Offer in Compromise Group (Long Beach Group). The Long Beach Group investigated whether to accept, reject, or return petitioner's offer. The offer specialist with the Long Beach Group found that there was an open Abusive Tax Avoidance Transaction (ATAT) investigation. The

---

[5](...continued)
OICs submitted on or after July 16, 2006. Sec. 7122(c)(1)(A)(i) requires that the submission of any lump-sum OIC "be accompanied by the payment of 20 percent of the amount of such offer." See also Notice 2006-68, 2006-2 C.B. 105.

[*8] offer specialist contacted the revenue officer conducting the investigation to determine its status.

Since October 27, 2011, the assigned revenue officer had been investigating petitioner's ability to pay, focusing on identifying and attempting to collect petitioner's assets held through trusts, LLCs, and offshore accounts. Petitioner responded to the assigned revenue officer's requests for information dated November 7, 2012, and January 25, May 3, and September 7, 2017. At the time of trial of this case the investigation was still ongoing.

The offer specialist concluded that the OIC needed to be returned pending the completion of the revenue officer's ATAT investigation. On April 6, 2017, the offer specialist in the Long Beach Group returned petitioner's OIC, noting that there was an open ATAT investigation that could potentially affect the outstanding tax liabilities petitioner sought to compromise. Upon returning the OIC the offer specialist closed petitioner's case.

The settlement officer reviewed the Long Beach Group's decision to return petitioner's OIC and determined that the decision was consistent with IRS policy. On April 17, 2017, the settlement officer spoke with petitioner's counsel about the reasons the OIC was returned. She told petitioner's counsel that the Collection Division (Collection) properly returned the OIC on the basis of stated IRS policy.

[*9] The settlement officer also told petitioner's counsel that the pending TEFRA audits were still open.

Petitioner's counsel told the settlement officer that he did not agree with the OIC's being returned. He also informed the settlement officer that, on April 11, 2017, he had spoken with the offer specialist in the Long Beach Group and the acting general manager at Collection. Petitioner's counsel requested additional time to contact Collection to try to have the OIC reopened. The settlement officer gave petitioner's counsel until April 27, 2017, to contact Collection.

On April 27, 2017, the settlement officer again spoke to petitioner's counsel and reminded him that the OIC could be withdrawn. Petitioner's counsel told the settlement officer that petitioner did not want to withdraw his OIC and preferred instead to receive a notice of determination.

The settlement officer verified that the assessments for the years in issue were proper. On August 11, 2017, the settlement officer issued a notice of determination for each of the tax years in issue sustaining the NFTL filing. Each of the notices of determination states that Collection returned petitioner's OIC on April 6, 2017, "because there were other investigations pending at the Collection's level that might affect your delinquent tax account sought to be compromised" and that the Appeals Office "concurs that the basis determined by Collection to return

**[*10]** your Offer in Compromise was appropriate". The notices of determination also state: "In addition to the other investigations pending at the Collection's level, you have several pending TEFRA * * * partnership issues related to you and these issues will need to be resolved before Appeals can consider an Offer in Compromise for you".

In both notices of determination the settlement officer verified that all requirements of applicable law and administrative procedure had been met. The settlement officer also determined that the NFTL filings were appropriate collection actions that balanced the need for the efficient collection of unpaid taxes with the legitimate concern that such actions be no more intrusive than necessary.

OPINION

I.     Standard of Review

The Secretary is required to provide a taxpayer with written notice of the filing of an NFTL against the taxpayer's property or rights to property. Sec. 6320(a)(1). The notice must also inform the taxpayer of his or her right to a CDP hearing before an impartial officer or employee of the Appeals Office. Sec. 6320(a)(3), (b). At the CDP hearing the taxpayer may raise any relevant issue relating to the unpaid tax or the NFTL, including spousal defenses, challenges to

[*11] the appropriateness of the collection action, and offers of collection alternatives. Secs. 6320(b)(4), 6330(c)(2)(A). The taxpayer may challenge the existence or the amount of the underlying tax liability for any period only if he or she did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following the hearing the settlement officer must determine whether proceeding with the proposed collection action is appropriate. In making that determination the settlement officer is required to take into consideration: (1) whether the requirements of any applicable law or administrative procedure have been met, (2) any relevant issues raised by the taxpayer, and (3) whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Secs. 6320(c), 6330(c); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

The Court considers an underlying liability on review only if the taxpayer properly raised the issue during the CDP hearing. Sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107,

**[\*12]** 115 (2007). Petitioner did not raise the underlying liabilities for the years in issue during his CDP hearing.

Where the validity of the underlying tax liability is not at issue, we review the settlement officer's administrative determinations regarding nonliability issues for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). The Court does not conduct an independent review and substitute its judgment for that of the settlement officer. Id. If the settlement officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. Link v. Commissioner, T.C. Memo. 2013-53, at \*12.

This Court may review the settlement officer's verification under section 6330(c)(1) without regard to whether the taxpayer raised it at the CDP hearing. Secs. 6320(c), 6330(c)(1), (3)(A); see also Hoyle v. Commissioner, 131 T.C. 197, 202-203 (2008), supplemented by 136 T.C. 463 (2011). A settlement officer is required to base the notice of determination, in part, on the verification obtained under section 6330(c)(1) by ensuring that all legal requirements have been followed. Hoyle v. Commissioner, 131 T.C. at 201-202; see also sec. 6320(c).

**[\*13]** The section 6330(c)(1) verification is required for every determination. Hoyle v. Commissioner, 131 T.C. at 202-203.

II.    Scope of Review

Absent a stipulation to the contrary, an appeal in this case would normally lie with the U.S. Court of Appeals for the Ninth Circuit.  Sec. 7482(b)(1)(G)(i). Under Ninth Circuit precedent the scope of our review is generally limited to the administrative record.  See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009) (adopting Robinette v. Commissioner, 439 F.3d 455, 459-460 (8th Cir. 2006), rev'g 123 T.C. 85 (2004)), aff'g in part as to this issue T.C. Memo. 2006-166, and aff'g in part, vacating in part decisions in related cases.  Section 301.6330-1(f)(2), Q&A-F4, Proced. & Admin. Regs., defines the administrative record as Appeals' case file, including "any * * * documents or materials relied upon by the Appeals officer * * * in making the determination under section 6330(c)(3)".

At trial petitioner offered, as Exhibit 3-P, his counsel's handwritten notes summarizing two telephone conversations he had on April 11, 2017, with the Collection offer specialist and acting general manager following the return of petitioner's OIC by the Long Beach Group.  Petitioner contends that these notes should be considered part of the administrative record because the conversation

[*14] explained the Long Beach Group's reasons for returning petitioner's OIC and was not documented in the offer specialist's or acting general manager's case history notes. We do not agree.

Regardless of whether Exhibit 3-P meets the business record exception for hearsay in rule 803 of the Federal Rules of Evidence, the information contained in Exhibit 3-P was not part of the administrative record before the settlement officer at the time she rendered her determination. Accordingly, we will not look beyond the administrative record in resolving this case. See, e.g., Coastal Luxury Mgmt., Inc. v. Commissioner, T.C. Memo. 2019-43, at *7-*8. Exhibit 3-P is not part of the administrative record and is outside the scope of our review. See Keller v. Commissioner, 568 F.3d at 718.

III. Abuse of Discretion

A. Return of the OIC

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Regulations implementing section 7122 set forth three grounds for the compromise of a liability: (1) doubt as to liability, (2) doubt as to collectibility, and (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to collectibility exists where the taxpayer's assets and income are less than the full

[*15] amount of the liability.  Id. subpara. (2).  The offer must include all unpaid tax liabilities and periods for which the taxpayer is liable.  Murphy v. Commissioner, 125 T.C. at 309; see also Internal Revenue Manual (IRM) pt. 5.8.1.7(1) (Jan. 1, 2016).

Pursuant to the authority granted in section 7122(d), the Secretary has developed guidelines and procedures to evaluate the adequacy of an OIC, including regulations, the IRM, and other publications used by the IRS.  See also Rev. Proc. 2003-71, sec. 2.02, 2003-2 C.B. 517, 517.  The IRM informs a settlement officer that the Centralized Offer in Compromise (COIC) unit determines whether an OIC is processable.  IRM pt. 8.22.7.10.1.1(1) (Sept. 23, 2014).  The Holtsville COIC Unit determined that petitioner's OIC was processable.

Petitioner argues that respondent violated the mandate of section 6330(c)(3) by agreeing with the offer specialist's decision to return the OIC and by basing her determination, in part, on the open 2009 TEFRA assessment for Zelly.  When an OIC is processable, Collection investigates the offer and can either accept it, provide a recommendation to reject it, or determine whether the offer should be returned to the taxpayer.  IRM pt. 8.22.7.10.1.1(2).  If a taxpayer is the subject of an open ATAT investigation, consideration of the OIC cannot proceed until the

[*16] investigation is complete.  IRM pt. 5.8.4.17(2) (May 10, 2013).  A taxpayer's offer is closed and the 24-month statutory period of automatic acceptance prescribed in section 7122(f) ends when the COIC unit returns a taxpayer's OIC.  IRM pt. 8.23.3.1.1.1(6) (Oct. 15, 2014).

Petitioner contends that the settlement officer, in making her determination, violated the statutory mandate because she erroneously deferred to the revenue officer conducting the ATAT investigation.  We do not agree.  The Long Beach Group investigated petitioner's OIC and determined that it should be returned due to an open ATAT investigation.  The Long Beach Group's decision also considered the total outstanding assessed tax liability owed and the ATAT revenue officer's attempts to identify petitioner's assets and collect his unpaid tax liabilities.  The settlement officer independently verified that the actions taken by the Long Beach Group were proper according to IRS guidance.

Petitioner further argues that the settlement officer abused her discretion in sustaining the NFTLs on the grounds of open TEFRA audits.  He contends that the Long Beach Group did not consider the open TEFRA audits in the OIC investigation.  He argues that the settlement officer could take into consideration only what the Long Beach Group considered.

[*17] In OIC investigations IRS employees, including Appeals Office settlement officers, are directed to check for pending assessments, including TEFRA proceedings. IRM pts. 5.8.4.17(1), 8.23.3.9.4(1)(a) (Oct. 15, 2014). If there is an open TEFRA audit, a settlement officer is directed to attempt to secure a withdrawal of the OIC. Id. pt. 8.23.3.9.4(1)(a). An OIC may be returned if there is at least one open TEFRA case. Id. pt. 5.8.4.17(2).

Alternatively, petitioner argues that the settlement officer abused her discretion because he contends that there were no open TEFRA audits when the settlement officer rendered her decision. Under IRS policy an OIC cannot be accepted until all TEFRA issues have been resolved. See id. pt. 8.23.3.9.4. Petitioner contends that the parties in the 2009 Zelly proceeding had filed a stipulation of settled issues on February 6, 2017. Petitioner submitted his OIC, in part, to compromise his tax liability for 2009. This Court did not enter a decision in Zelly until after the settlement officer issued the notices of determination. The IRS could not assess the 2009 liability for Zelly until after this Court entered its decision. Therefore, the settlement officer properly determined that petitioner's OIC should be returned because of the outstanding assessment of the Zelly TEFRA proceeding.

[*18] Sections 6320(c) and 6330(c)(3)(C) require a settlement officer to consider whether the proposed collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary. The settlement officer followed the procedures set forth in the IRM. She properly verified that petitioner was the subject of an open and ongoing ATAT investigation and that there was at least one open TEFRA case pertaining to him. Before issuing the notices of determination the settlement officer also verified that the assessments for the years in issue were proper and that petitioner received all required notices pertaining to the NFTL filings.

We find that the settlement officer did not abuse her discretion in sustaining the NFTL filings due to the OIC being returned to petitioner.

B.    20% OIC TIPRA Payment

Section 7122(c)(1)(A)(i) requires that the submission of any lump-sum OIC be accompanied by a payment of 20% of the offer amount. Any OIC paid in five or fewer payments is considered a lump-sum OIC. Sec. 7122(c)(1)(A)(ii). The legislative history of section 7122(c) refers to the 20% payment as a "partial payment" or "down payment" of the taxpayer's liability. H.R. Conf. Rept. No. 109-455, at 234 (2006), 2006 U.S.C.C.A.N. 234, 420-421. The 20% payment of

[*19] the offer amount is treated as a payment of tax rather than a refundable deposit under section 7809(b) or section 301.7122-1(h), Proced. & Admin. Regs. See Notice 2006-68, sec. 1.02, 2006-2 C.B. 105, 105.

Under section 7122(c)(2)(A) the taxpayer may specify how he or she wants their TIPRA payment applied by making the request in writing when he or she submits the OIC. Notice 2006-68, sec. 1.04, 2006-2 C.B. at 105. If no such specification is made, the IRS will apply the TIPRA payment in the best interest of the Government. Id.

On November 16, 2016, petitioner submitted an OIC of $400,000 on the basis of doubt as to collectibility. As required by section 7122(c)(1), petitioner included a payment of $80,000 (20% of the OIC) with the submission of his OIC. At the bottom of Form 656 petitioner acknowledged that his TIPRA payment was nonrefundable and would not be returned to him if his OIC was withdrawn, rejected, or returned.

Petitioner contends that it was an abuse of discretion for respondent to return his OIC and not refund the 20% "deposit" he paid with his submission. The 20% payment submitted with a lump-sum OIC is nonrefundable. Notice 2006-68, sec. 1.02; see also Isley v. Commissioner, 141 T.C. 349, 372 (2013). Petitioner acknowledged this when he submitted his OIC and 20% TIPRA payment. We

[*20] conclude that it was not an abuse of discretion for the settlement officer to retain petitioner's 20% TIPRA payment.

## IV. Deemed Acceptance of the OIC

Petitioner contends that respondent did not formally reject his OIC, and therefore, it is deemed accepted by operation of law under the provisions of section 7122(f), which provides that an OIC is deemed accepted if it is not rejected before 24 months after it is submitted. Petitioner submitted his OIC on November 16, 2016. The Long Beach Group correctly returned petitioner's OIC on April 6, 2017, at which point his OIC was considered closed. See IRM pt. 8.23.3.1.1.1(6) (stating that the 24-month acceptance period provided in section 7122(f) ends when an OIC is rejected or returned). Accordingly, petitioner's OIC is not deemed accepted by operation of law under the provision of section 7122(f).

## V. Conclusion

We conclude the settlement officer did not abuse her discretion. We have considered all other arguments made and facts presented in reaching our decision, and to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

**[*21]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.
